Wilton J. CUEVAS, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

No. 91–266.

United States Court of Veterans Appeals.

Dec. 21, 1992.

Wilton J. Cuevas, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, were on the pleadings, for appellee.

Before FARLEY, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge:

Wilton J. Cuevas appeals from a November 9, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied his previously disallowed claim for service connection for hearing loss on the grounds that no new and material evidence had been submitted to reopen the claim. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)). For the reasons set forth below, we vacate the decision of the BVA and remand the case for readjudication consistent with this opinion.

## FACTS

The veteran served in the United States Army from September 1952 to July 1953. R. at 1. The record contains a copy of his separation examination report dated July 2, 1953. R. at 2–3. Under a section of this report labeled "Clinical Evaluation," there are boxes provided next to the names of areas and systems of the body where an

examining physician may place a check or an X under the columns for "Normal" or "Abnormal." R. at 2. On the copy of the veteran's separation examination report that is in the record, it is not clear whether the box for "Normal" next to "Item 22, Ears–General" had ever been checked. The box under "Abnormal" is blank. R. at 2. An X was placed under "Normal" next to "Item 23, Drums (*Perforation*)." R. at 2. The results were 15/15 for right and left ears for both whispered voice and spoken voice hearing tests. R. at 3. An audiometric test was not performed. *Id.* Finally, Block 20 of the separation examination report reflects that the veteran answered "yes" to "have you ever had or have you now ... ear ... trouble?" R. at 4.

In October 1985, the veteran applied to the Veterans' Administration (now Department of Veterans Affairs) (VA) for compensation or pension for a hearing problem. R. at 6–9. On his application, he claimed he was treated for a hearing problem in 1952 at Ft. Leonard Wood, Missouri, Army Hospital and in 1953 at Oakland, California, Army Base Hospital. R. at 7, 28.

The record contains a VA Regional Office (RO) rating decision, dated November 25, 1985, denying the veteran's claim and stating, "[D]ischarge examination dated [July 2, 1953], for the purpose of release from active duty[,] shows no abnormalities. Hearing was shown to be normal in both ears." R. at 10. The VA informed the veteran of this decision by letter dated December 10, 1985. R. at 13. However, the record also contains a letter, dated December 31, 1985, from a VA adjudication officer to the veteran, which stated that the VA had received the veteran's "claim for service-connected disabilities" but that "a delay ha[d] been incurred due to the temporary or permanent unavailability of [the veteran's] complete service medical records," and that therefore the VA was "making every effort to obtain sufficient evidence on which to base [its] decision from alternate or collateral sources." R. at 11. The letter also informed the veteran that he should attempt to furnish evidence to support his claim to the best of his ability and suggested types of evidence that he might submit. *Id.*

On January 14, 1986, the VA received a letter from the veteran, handwritten on the VA's notification letter of December 10, 1985, which the VA construed as a Notice of Disagreement (NOD). R. at 13. In his letter, the veteran implied that the Army was aware of his hearing problem while he was in service and that because of it he was not allowed to complete a "tractor and scraper" course because he "couldn't stand the noise." *Id.*

On January 21, 1986, the VARO issued a rating decision which confirmed the previous denial of the veteran's claim and stated that "[t]he negative reply from [National Personnel Records Center (NPRC)] showing no medical records on file at NPRC (Fire Related Service) furnishes nothing new or material to serve to command a change in previous decision." R. at 14. The VA issued a Statement of the Case (SOC), dated February 12, 1986, on which it was noted that VA Form 00–3101–3 received from NPRC "shows this is a fire related case and there are no medical records on file for Wilton J. Cuevas." R. at 17. On the same day, February 12, 1986, the VA received a letter from the veteran in which he continued to claim that his hearing problem was incurred in service. R. at 19–20.

In January 1988, the veteran wrote to the VA seeking to reopen his claim for service connection for hearing loss. R. at 21. In his letter, the veteran requested that he be sent copies of all records pertinent to his claim. *Id.* In a letter dated March 3, 1988, to the veteran's Congressman, the VA stated that the veteran "was notified on December 10, 1985, that service connection could not be established for hearing loss," that "[a] copy of his discharge examination of July 2, 1953, showed that his hearing was normal in both ears," and that the VA had "obtained all available service medical records and [was] not aware of the existence of any other records." R. at 22. An SOC issued in 1990 shows that on March 24, 1988, the VA sent a letter to the veteran "advising him that

service connection had been denied and that he must submit new and material evidence to reopen his claim," but the letter itself is not in the record. R. at 28.

On January 11, 1989, the veteran submitted VA Form 21–4138, Statement in Support of Claim, on which he wrote that he wished to reopen his claim for service connection for hearing loss. R. at 23. The veteran acknowledged that this claim had been disallowed previously but requested a reopening "based upon the recent find of medical records now located in St. Louis." *Id.* A rating sheet from a rating decision on appeal which was conducted in 1990 shows that a deferred rating decision in this case was issued on February 1, 1989. R. at 63. However, a copy of the rating sheet from that deferred rating decision is not in the record.

The 1990 SOC mentioned above shows that on February 10, 1989, the veteran was "advised by letter that his discharge examination of July 2, 1953[,] is of record and showed normal hearing at time of discharge" and "that he must submit evidence showing a neurosensory hearing loss diagnosed to a compensable degree within one year of discharge from service." R. at 28. However, the February 10, 1989, letter itself is not in the record. In addition, the 1990 SOC chronicles the following events in this case, for which copies of the corresponding documents are not contained in the record: On February 17, 1989, the "[v]eteran requested complete copy of service medical records"; on April 24, 1989, the VA "[r]eceived response from Service Department that search of recently-discovered records was negative for further records"; on April 28, 1989, "[a]ppropriate forms [were] forwarded to veteran for completion and return"; on July 27, 1989, the "[v]eteran [was] advised that his claim for benefits was disallowed because he failed to complete forms sent to him"; and on October 3, 1989, "[c]opies of service medical records [were] sent to veteran." R. at 28.

On December 11, 1989, the VA received VA Form 21–4138, Statement in Support of Claim, on which the veteran wrote: "I disagree with your decision disallowing service connection on my hearing loss." R. at 24. The veteran also requested that a hearing be scheduled. *Id.* The VA construed this letter as an NOD (R. at 28) and issued an SOC on January 20, 1990. R. at 25–30. The VA phrased the issue in the case as "[n]ew and material evidence to reopen claim for service connection for hearing loss." R. at 27.

On February 22, 1990, a hearing was held at the VARO in Jackson, Mississippi. R. at 31–41. The veteran testified under oath that he developed a hearing problem while training as an infantryman and firing a .50–caliber machine gun on the field and that he was transferred to become a heavy equipment operator but only completed six weeks of the training course because his ears started ringing and he began having headaches. R. at 32. He also claimed he was treated in hospitals twice for hearing problems—once in 1952 and once in 1953—on an outpatient basis, that no hearing examinations were conducted, and that he was given pain pills and drops. R. at 32–33. He also described one particular event that may have caused his hearing problem: a soldier accidentally fired a machine gun while the veteran was stooped over, straightening out a mat and had not yet gotten into position to feed ammunition. R. at 33. The veteran testified that this incident had caused his ears to ring. *Id.* In addition, the veteran testified that, while in service, he could not hear a bugle sound, and, on one occasion when he did not salute at the sound of a bugle, a lieutenant asked whether he had heard the bugle. R. at 34. The veteran stated that when he answered that he had not heard the bugle, he was ordered to the dispensary in Oakland where he was given medication. *Id.* The veteran also testified that, while in Korea, he was not allowed to perform guard duty or operate the heavy machinery because he could not hear. R. at 34–35.

When asked at the hearing to explain why his discharge examination report noted no hearing problem, he stated that "We didn't even have a physical. . . . The onlyst [sic] thing they did to us was run us through a line to see if we had any kind of

disease, VD or something like that." R. at 35. However, he acknowledged that he did sign his discharge papers. *Id.* Finally, the veteran testified that he did not recall the first time he sought medical treatment for his hearing problem (R. at 36), but that in approximately 1985 or 1986 he had a hearing test that confirmed his hearing loss. R. at 36–37. Finally, the veteran testified that he currently was suffering from a hearing impairment and had had hearing problems from the time of his separation from service until his first diagnosis, when he had received treatment for hearing loss in 1985 or 1986. R. at 37.

On March 22, 1990, the Hearing Officer denied the veteran's claim because "testimony and argument presented at the hearing [did] not present new and material evidence to warrant service connection for hearing loss." R. at 42. The veteran was informed of the Hearing Officer's decision by letter dated March 28, 1990. R. at 47. The veteran subsequently filed a VA Form 1–9 dated May 15, 1990. R. at 43. In a letter dated May 31, 1990, to the Chairman of the BVA, the veteran's Congressman acknowledged that there was little evidence to substantiate Mr. Cuevas' claim because of the unavailability of his service medical records but requested that consideration be given to his testimony and to Block 20 of his separation examination report where he reported having ear trouble in 1953. R. at 44.

On June 22, 1990, the VA issued a rating decision on appeal which noted that an appeal had been taken from a deferred rating decision dated February 1, 1989, and that the issue was "whether or not the veteran had submitted new and material evidence to establish service connection for hearing loss." R. at 63. The rating sheet also reflected that an SOC had been furnished on January 29, 1990, and that the rating decision had been reconsidered on the basis of all evidence of record. *Id.* The rating board affirmed the previous rating decision denying the veteran's claim. *Id.*

On November 9, 1990, the BVA denied the veteran's claim for service connection, concluding that, "[f]ollowing an unperfect-ed appeal of a November 1985 rating determination, there is no new factual basis warranting an allowance of service connection for hearing loss." *Wilton J. Cuevas,* BVA 90–36908, at 4 (Nov. 9, 1990). The veteran perfected a timely appeal to this Court.

### ANALYSIS

■ Although the veteran filed an NOD with the November 25, 1985, RO rating decision denying his claim for service connection, there is no evidence in the record that he perfected his appeal to the BVA by filing a VA Form 1–9 subsequent to receiving the February 12, 1986, SOC. 38 C.F.R. § 19.123 (1991) (superseded by 57 Fed.Reg. 4112 (1992), to be codified at 38 C.F.R. § 20.202) ("A Substantive Appeal consists of a properly completed VA Form 1–9, 'Appeal to [BVA],' or correspondence containing the necessary information."); 38 C.F.R. § 19.129(b) (1991) (superseded by 57 Fed. Reg. 4113 (1992), to be codified at 38 C.F.R. § 20.302(b)) ("[A] Substantive Appeal must be filed within 60 days from the date that the agency of jurisdiction mails the [SOC] to the appellant. . . ."). Because the veteran did not perfect a timely appeal to the Board in 1986, the November 25, 1985, rating decision was final, and in order to reopen his claim, the veteran was required to submit new and material evidence. 38 U.S.C. § 5108 (formerly § 3008); 38 C.F.R. § 19.192 (1991) (superseded by 57 Fed.Reg. 4126 (1992), to be codified at 38 C.F.R. § 20.1103). Therefore, the issue presented in this appeal is whether the veteran presented new and material evidence to reopen his claim.

This Court has held that

the BVA must perform a two-step analysis when a veteran seeks to reopen a claim based upon new evidence. First, the BVA must determine whether the evidence is "new and material". 38 U.S.C. § [5108]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old.

*Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). In this case, the BVA found as fact that "[t]he agency of original jurisdiction [AOJ] denied service connection for hearing loss in November 1985," that the veteran "did not timely file a substantive appeal," and that "there has been no new evidence which changes the facts upon which the [AOJ's] rating action was predicated." *Wilton J. Cuevas,* BVA 90–36908, at 3 (Nov. 9, 1990). The BVA decision, written before this Court decided *Manio,* is not articulated in terms of the "two-step" analysis, but it appears that the Board determined that the veteran had failed to present new and material evidence to reopen his claim.

 The determination whether evidence is new and material under 38 U.S.C. § 5108 is a question of law which this Court reviews de novo. *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). New evidence is "evidence which is not ... merely cumulative of other evidence on the record." *Id.* Material evidence is evidence that "is relevant [to] and probative of the issue at hand" and presents "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Id.*

What is particularly noteworthy about this case and what makes the Court's determination regarding new and material evidence particularly troublesome is that the record on appeal is quite vacuous. In this regard, the Court notes that much of the factual and procedural background of the case set forth above was not derived from documents in the record itself but pieced together secondhand from references to those documents in other documents. It is therefore difficult to determine from the record what evidence was considered by the AOJ in 1985 or to distinguish with certainty new evidence from old or cumulative evidence. The BVA decision provides little clarification in this regard because the Board provided few, if any, reasons or bases for its determination that no new and material evidence had been presented in this case. The Board's DISCUSSION AND EVALUATION section states as follows:

Pursuant to the veteran's reopened claim, he has testified at a hearing on appeal concerning claimed hearing loss which he asserts started during service. He also submitted copies of service medical data previously considered by the originating agency. However, there has been no evidence submitted in support of his reopened claim showing a hearing loss during or subsequent to service. Thus, the facts upon which the November 1985 rating determination were predicated remain unchanged.

*Cuevas,* BVA 90–36908, at 3.

Although the Board noted that the veteran testified under oath at a hearing, it apparently did not consider his testimony as evidence in support of his claim, nor did it address the credibility of appellant's sworn testimony or provide reasons for discounting that testimony, which it is required to do. *Hatlestad v. Derwinski,* 1 Vet.App. 164, 170–71 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of appellant's personal, sworn testimony as evidence). In *Smith v. Derwinski,* 1 Vet.App. 235 (1991), the Court noted the following with regard to credibility:

Credibility is determined by the fact finder. As this Court determined in *Jones* [*v. Derwinski,* 1 Vet.App. 210 (1991)], at 217, the Court cannot determine the credibility of a veteran's sworn testimony. Determination of credibility is a function for the BVA.

*Smith,* at 237–38.

 In addition, this Court recently held that in determining whether evidence is new and material, "the credibility of the evidence is to be presumed." *Justus v. Principi,* 3 Vet.App. 510, 512–513 (1992). Specifically, the Court observed that "[t]his presumption is made only for the purpose of determining whether the case should be reopened. Once the evidence is found to be new and material and the case is reopened, the presumption that it is credible and entitled to full weight no longer applies." *Justus,* at 513. Thus, if the sworn testimony of a claimant meets the definition of new

and material evidence then the claim must be reopened. Here, the veteran's testimony provides information not previously before the BVA, which is relevant to and probative of the issue at hand, and, if believed, presents a reasonable possibility of changing the outcome of the claim. Accordingly, we hold as a matter of law that it was new and material evidence and that the BVA should have reopened the veteran's claim.

■ Upon reopening, the Board has the duty to assist the veteran in developing facts pertinent to his claim. 38 U.S.C. § 5107(a) (formerly § 3007(a)). This duty is heightened in a case such as this where service medical records are presumed destroyed and includes the obligation to search for alternate medical records. *Moore v. Derwinski*, 1 Vet.App. 401, 406 (1991). Although the record shows that the VA did search previously for records (R. at 11, 14, 28), it is not clear from the record or from the BVA decision whether those searches specifically included searches for records from the Ft. Leonard Wood and Oakland Army Hospitals where the veteran testified that he received treatment for his ears, or whether every effort was made to reconstruct records. Remanding the case will afford the Board the opportunity to search for records and to provide a more detailed account of the nature of that search and its outcome.

■ In addition, the Court observes that establishing service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service or some other manifestation of the disability during service. 38 U.S.C. § 1110 (formerly § 310); 38 C.F.R. § 3.303 (1991); *Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (1992). In this regard, the Court notes that there is no evidence in the record, other than the veteran's testimony, that he suffers currently from hearing loss. The Court also notes that section 3.103(c)(2) of the regulations, which pertains to the right to a hearing as part of a claimant's procedural due process and appellate rights, provides in pertinent part as follows:

> ... The purpose of a hearing is to permit the claimant to introduce into the record in person any available evidence which the claimant may consider material and any arguments and contentions with respect to the facts and applicable law which the claimant may consider pertinent. *It is the responsibility of the VA personnel conducting the hearings to explain fully the issues and suggest the submission of evidence overlooked and which would be of advantage to the claimant's position.*

38 C.F.R. § 3.103(c)(2) (1991) (emphasis added). *See Douglas v. Derwinski*, 2 Vet. App. 435, 440–42 (1992) (en banc). The Court holds that the VA's statutory duty to assist includes, in cases such as this, having the Hearing Officer tell the veteran that, at a minimum, he should submit a doctor's report or statement confirming the existence of current hearing loss, especially since the veteran had testified that a hearing test in 1985 or 1986 had confirmed a hearing loss. R. at 36–37. The Court recognizes that in December 1985 the VA sent the veteran a letter asking him to furnish evidence in support of his claim. However, the hearing officer should have reiterated this request at the hearing and explained to the veteran the importance of submitting evidence in support of his claim, particularly given that his service medical records had been destroyed. Moreover, this is a case where the duty to assist includes " 'the conduct of a thorough and contemporaneous medical examination,' *Green [v. Derwinski*, 1 Vet.App. 121, 123–24], ... which includes 'a medical opinion as to whether [the veteran's] current disabilities are in any way related to ... those [he may have] experienced in service.' " *Moore*, 1 Vet.App. at 405 (quoting *Witherspoon v. Derwinski*, 2 Vet.App. 4 (per curiam order 1991)).

### CONCLUSION

For the reasons noted above, we VACATE the decision of the BVA and REMAND the case for readjudication of the veteran's claim. We note that remand is

not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004)," but "is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In this case, it also entails addressing the credibility of the veteran's sworn testimony as evidence, considering that testimony in light of the corroborating evidence of the statement on his separation examination in 1953 that he had ear trouble, assisting the veteran in his search for alternate records, explaining to him the types of evidence he might submit to support his claim, and providing him with a medical examination.