**Benito C. LAYNO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–353.

United States Court of Veterans Appeals.

May 27, 1994.

As Amended June 15, 1994.

Benito C. Layno, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Elizabeth Milgram, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Judges.

MANKIN, Judge, filed the opinion of the Court, in which NEBEKER, Chief Judge, joined. STEINBERG, Judge, filed a separate opinion concurring in part and dissenting in part.

MANKIN, Judge:

Benito C. Layno (appellant) appeals a February 14, 1992, decision of the Board of Veterans' Appeals (BVA or Board) finding that the appellant did not establish service connection for bronchial asthma. The appellant claims the BVA erred in determining that he did not present sufficient credible evidence to establish service connection. However, we hold that the Board erred in finding that the appellant's claim was well grounded and therefore vacate the February 14, 1992, decision of the Board.

### I. Factual Background

The appellant served on active duty from July 1946 to March 9, 1949. He claimed that he incurred bronchial asthma during that time, and therefore sought service connection for the injury. Having been denied by the Regional Office (RO), the appellant appealed to the BVA. In its February 14, 1992, decision, the Board made specific findings of fact regarding whether the evidence was sufficient to grant the claim, and whether the appellant's witnesses were credible.

Regarding the appellant's evidence in support of his claim for service connection for bronchial asthma, the Board found that the appellant had not presented sufficient credible evidence. The Board found that the appellant's service medical records had been destroyed in the 1973 fire at the National Personnel Records Center (NPRC). Accordingly, the NPRC certified that the appellant had "fire-related service," and conducted a search of the morning and sick reports for the period September 1948 through January 1949. The period searched by the NPRC was that indicated by the appellant as pertinent to his claim. The search revealed only one sick report entry for the appellant. This entry was dated December 8, 1948, and indicated no diagnosis, but did note that the appellant was returned for service the same day.

Additionally, the Board found that the evidence in support of the appellant's claim was slim. The appellant presented his own testimony as to the onset and diagnosis of bronchial asthma prior to his discharge on March 9, 1949. Specifically, the appellant testified in September 1991, more than forty years after the fact, that "[i]t was on or about March 8, 1949 [the day before the appellant's discharge], that the first manifestations of my asthma was [sic] shown." He also testified as to the exact date, January 15, 1950, when he began treatment for bronchial asthma by a private physician.

He also proffered a written statement from his private physician, Amador Corpuz, M.D., that he had been treated for "recurrent bronchial asthma" from January 15, 1950, to March 30, 1955. An additional written statement from the appellant's doctor indicated that the appellant's treatment records from October 1, 1953, to December 7, 1986, were available, but that earlier records "must have been misplaced, lost or destroyed due to the length of time that have [sic] elapsed since 1950." The appellant presented copies of treatment records for the period October 1953 to December 7, 1986, in support of his claim.

The appellant also presented the joint sworn affidavit of Euletrio Laeno and Silvestre Madalipay, stating they had personal knowledge of the appellant's bronchial asthma "since early March 1949," its onset, and treatment by Dr. Corpuz "from January 15, 1950 up to March 30, 1955." The affiants stated they had this personal knowledge because they had the opportunity to observe the appellant on a regular basis. The affiants did not testify as to their particular observations regarding the appellant's symptoms or conditions, only that they had personal knowledge of the appellant's bronchial asthma. The affiants also stated that they had personal knowledge of the appellant's treatment by Dr. Corpuz because they had been invited to accompany the appellant when he went for treatment. The affiants did not state whether they had actually accompanied the appellant to his appointments with Dr. Corpuz.

The Board also reviewed the live testimony of Silvestre Madalipay, Cecilia Magbual, and Alejandra Gampong on behalf of the appellant at an RO hearing in September 1991. Mr. Madalipay testified that he knew the appellant and had the opportunity to observe him. Mr. Madalipay stated that the appellant had difficulty breathing "after his arrival at our place," and that this was not consistent with the appellant's preservice condition. Ms. Magbual testified that she also knew the appellant, and had the opportunity to observe him "after he arrived from Okinawa." She noted that his condition was "very bad." Finally, Ms. Gampong testified that she too knew the appellant, and stated that upon his return from service, the appellant "started complaining about his asthma."

Finally, the Board noted that the appellant stated that he had been treated three times in service for bronchial asthma through sick calls. However, the Board found no support for such treatment in the appellant's service medical records. The Board also found no documentary evidence to support the appellant's claim of private treatment after discharge but prior to 1953.

The Board additionally found inconsistencies in the evidence presented by the appellant. The Board found it contradictory that the appellant initially stated he had been treated for bronchial asthma from September 1948 to January 1949, but later claimed to have had bronchial asthma on or about March 8, 1949, one day before his discharge. Based upon the time that had passed between the initial observation and time of testimony, the Board found it "extremely suspect that 4 people remember the exact same date that the appellant began receiving treatment for bronchial ·asthma almost 40 years ago, and remember with such specificity his condition immediately following service." Consequently, the Board concluded that due to the inconsistencies in the record, "The best conclusion ... is that bronchial asthma was not incurred [in] or aggravated by service." This appeal followed.

## II. Analysis

■ The Secretary first contends that this Court need not address any of the issues regarding the Board's analysis of the evidence because the appellant's claim is not well grounded. The Secretary argues that the determinative issue in the appellant's claim is medical causation or diagnosis, and relies upon *Grottveit v. Brown*, 5 Vet.App. 91, 92–93 (1993), for the proposition that lay assertion of medical causation or diagnosis is insufficient to render a claim well grounded. A claim is well grounded where it is plausible or capable of substantiation. *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). The quality and quantity of evidence required to satisfy this statutory burden will depend upon the nature of the claim. *Grottveit*, 5 Vet.App. at 93.

■ In the present case, the appellant is seeking service connection for bronchial asthma. He has "the burden of submitting evidence sufficient to justify a belief that the claim is well grounded...." *Id.* at 92. More than just an allegation is required to present a well-grounded claim; a claimant must submit evidence that will "justify a belief by a fair and impartial individual that the claim is plausible." *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992). We will therefore conduct a de novo review of the Board's legal determination that the appellant has presented sufficient evidence capable of substantiating a belief that the claim is well grounded. *See Grottveit,* 5 Vet.App. 91.

■ As a general matter, in order for any testimony to be probative of any fact, the witness must be competent to testify as to the facts under consideration. *See Espiritu v. Derwinski,* 2 Vet.App. 492 (1992); FED. R.EVID. 601. First, a witness must have personal knowledge in order to be competent to testify to a matter. FED.R.EVID. 602; *Jaroslawicz v. Seedman,* 528 F.2d 727, 732 (2d Cir.1975) (witness not competent to testify about event at which he was not present). Personal knowledge is that which comes to the witness through the use of his senses—that which is heard, felt, seen, smelled, or tasted. *United States v. Brown,* 540 F.2d 1048, 1053 (10th Cir.1976) (witnesses may testify "upon concrete facts within their own observation and recollection—that is, facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts"), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977). Competency, however, must be distinguished from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. *Cartright v. Derwinski,* 2 Vet.App. 24, 25 (1991) ("Although interest may affect the credibility of testimony, it does not affect competency to testify."); *Mason v. United States,* 402 F.2d 732, 738 (8th Cir.1968) ("While the opportunity of ... [the] witnesses to observe ... was relatively brief, this factor goes to the weight

of the evidence, not to its admissibility."), *cert. denied,* 394 U.S. 950, 89 S.Ct. 1288, 22 L.Ed.2d 484 (1969).

■ In instances such as this case presenting the question as to what testimony is competent, this Court has held that lay witnesses are competent to provide testimony that may be sufficient to substantiate a claim of service connection for an injury. *Horowitz v. Brown,* 5 Vet.App. 217, 221–22 (1993); *Ascherl v. Brown,* 4 Vet.App. 371, 376 (1993); *Rhodes v. Brown,* 4 Vet.App. 124, 126–27 (1993); *Cuevas v. Principi,* 3 Vet.App. 542, 547–48 (1992); *Culver v. Derwinski,* 3 Vet. App. 292, 297–98 (1992); *Cartright,* 2 Vet. App. at 25; *see also* 38 C.F.R. § 3.303(a) (1993). Lay evidence, then, may provide sufficient support for a claim of service connection, and it is error for the Board to require medical evidence to support that lay evidence. *Horowitz,* 5 Vet.App. at 221–22; *Ascherl,* 4 Vet.App. at 376; *Rhodes,* 4 Vet.App. at 126–27; *Cuevas,* 3 Vet.App. at 547–48; *Culver,* 3 Vet.App. at 297–98; *Cartright,* 2 Vet.App. at 25; *see also* 38 C.F.R. § 3.303(a). In fact, where, as here, the claimant's service medical records have been destroyed or lost, the Board is under a duty to advise the claimant to obtain other forms of evidence, such as lay testimony. *Dixon v. Derwinski,* 3 Vet.App. 261, 263 (1992); *Garlejo v. Derwinski,* 2 Vet.App. 619, 620 (1992). The record clearly indicates that the appellant's service records were destroyed, but it does not appear that the appellant was advised to provide alternate forms of evidence. This error, however, is not prejudicial to the appellant since he has, of his own accord, provided lay testimony and other forms of evidence to provide support for his claim. *See* 38 U.S.C. § 7261(b).

■ Where this Court has deemed lay testimony competent, the witness has testified to the symptoms or facts that he observed. *See, e.g., Horowitz,* 5 Vet.App. at 221–22; *Ascherl,* 4 Vet.App. at 376; *Rhodes,* 4 Vet.App. at 126–27; *Cuevas,* 3 Vet.App. at 547–48; *Culver,* 3 Vet.App. at 297–98; *Cartright,* 2 Vet.App. at 25. Competent testimony is thus limited to that which the witness has actually observed, and is within the

realm of his personal knowledge. *See Cartright,* 2 Vet.App. at 25. Thus, each witness in the present case, Mr. Laeno, Mr. Madalipay, Ms. Magbual, and Ms. Gampong, having testified that they personally know the appellant and having had the opportunity to observe him, are generally competent to testify as to their observations regarding his claim for service connection. *See Jaroslawicz,* 528 F.2d at 732.

 Lay witness competency, however, is not unlimited, and the fact that a lay witness may personally know the veteran and may have had the opportunity to observe him does not render his testimony universally competent. Generally, lay testimony is not competent to prove that which would require specialized knowledge or training. FED. R.EVID. 601, 602, 701, 702; *Espiritu,* 2 Vet. App. at 494–95; *see also Visser v. Packer Engineering Assoc., Inc.,* 924 F.2d 655, 659–60 (7th Cir.1991) (lay assertion cannot be "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [the witness's] experience;" witness not competent to describe motive because testimony too much like psychoanalysis, for which witness not qualified). Specifically, this Court has held that lay testimony is not competent to prove a matter requiring medical expertise. *Fluker v. Brown,* 5 Vet.App. 296, 299 (1993); *Moray v. Brown,* 5 Vet.App. 211, 214 (1993); *Kates v. Brown,* 5 Vet.App. 93, 95 (1993); *Grottveit,* 5 Vet.App. at 92–93; *Clarkson v. Brown,* 4 Vet.App. 565, 567 (1993). Thus, "lay assertions of medical causation cannot constitute evidence to render a claim well grounded. . . ." *Grottveit,* 5 Vet. App. at 93.

 The appellant, Mr. Laeno, and Mr. Madalipay all testified that the appellant suffered from bronchial asthma upon return from service. Ms. Magbual and Ms. Gampong each testified that they agreed with the appellant's statement that he suffered from bronchial asthma upon return from the service. This lay testimony constitutes testimony that the appellant had a *particular injury or illness.* It is not testimony about the *symptoms or features* that the appellant exhibited upon return from service, and thus must be excluded as incompetent testimony.

It was therefore error for the Board to consider this lay testimony, as it should have properly been excluded. However, this error is harmless as it resulted in consideration of additional testimony supporting the appellant's claim.

 Lay testimony is competent only when it regards the features or symptoms of an injury or illness. *Horowitz,* 5 Vet.App. at 221–22; *Culver,* 3 Vet.App. at 297–99; *Budnik v. Derwinski,* 3 Vet.App. 185, 186–87 (1992); *Mohr v. Derwinski,* 3 Vet.App. 63, 65 (1992); *Fisher v. Derwinski,* 2 Vet.App. 406, 408 (1992). A lay witness may testify as to his or her observations of the features or symptoms that a claimant exhibited. *Horowitz,* 5 Vet.App. at 221–22. Thus, for example, this testimony is competent to prove that a claimant exhibited certain features or symptoms of an injury or illness during service, or that the claimant did not exhibit certain features or symptoms before service that are present after service, or that the claimant exhibited certain features or symptoms at a particular point in time following service. *Id.* It bears repeating that this type of testimony is competent only so long as it remains centered upon matters within the knowledge and personal observations of the witness. Should the testimony stray from this basic principle and begin to address, for example, medical causation, that portion of the testimony addressing the issue of medical causation is not competent.

 The record shows that the appellant testified:

It was on or about March 8, 1949 that the first manifestations of my asthma was shown. I observed it and I consulted the B 37 Station Hospital because we were then at the Camp Filipinas in Okinawa and they only gave me a tablet to take for the relief of my asthma and that was the time we were sent home.

The appellant provided no testimony or other evidence regarding any symptoms or features of an illness that he exhibited. Although the veteran testified under oath that on the day prior to his discharge he was given "a tablet to take for the relief of my asthma," his testimony does not reveal

whether the basis for his statement was something told to him by a medical professional or was, instead, his own belief that the tablet was to treat his asthma. Thus, under *Espiritu*, 2 Vet.App. at 494–95, the appellant's testimony is competent only insofar as it states that he was given a tablet, and incompetent to prove that he had or was diagnosed with asthma.

■ Similarly, Mr. Laeno and Mr. Madalipay testified in an affidavit that the appellant had bronchial asthma, and that the appellant was treated for the condition. Regarding the appellant's treatment, Messrs. Laeno and Madalipay testified that they knew of the treatment because they had been invited to accompany the appellant to the Corpuz clinic. The affiants did not testify that they did in fact accompany the appellant and observe the treatment. Plainly, the affiants' testimony that the appellant had bronchial asthma must be excluded as incompetent. *Id.* Furthermore, their testimony that the appellant had in fact been treated for bronchial asthma must also be excluded because it lacks personal knowledge. Since they did not personally observe the treatment, they have no personal knowledge that the appellant was in fact treated. Accordingly, the substance of the affidavit must be excluded.

■ At the oral hearing, Mr. Madalipay also testified that the appellant had bronchial asthma. For the reasons previously stated, this must be excluded as incompetent. Mr. Madalipay further testified that "[a]fter his arrival at our place [following service] he had difficulty in breathing and I suspect that was asthma and that he was not the way he used to be. He was very healthy then before his entry into the service." This testimony is competent to show that the appellant had difficulty breathing following service, and that he was healthy prior to service. The testimony is competent because it is a recitation of information of a type which the witness is qualified to give and which is within his personal knowledge. *Id.*

At the same hearing, Ms. Magbual testified that the appellant's condition directly following service was very "bad." For the reasons previously noted, this testimony is competent to show that the appellant was not healthy following service. *Id.*

■ Finally, Ms. Gampong testified that upon his return from service, the appellant "started complaining about his asthma." While the evidence is not competent to show that the appellant did in fact have asthma, it is nonetheless competent for the limited purpose of showing that he began complaining of what he called asthma upon his return from service.

■ The Court therefore holds that to the extent the testimony was considered for probative purposes other than those outlined above, the Board committed error. However, since the error resulted in greater consideration of the appellant's claim, it was harmless. See 38 U.S.C. § 7261(b). Thus, the only evidence the appellant has presented in support of his claim is that he was healthy prior to service and that he had difficulty breathing following service, that his condition following service was very "bad," and that he began complaining of what he called asthma upon his return from service. The appellant, however, has presented no evidence showing that he incurred asthma during service. Simply, the appellant has presented no evidence relating his current condition to his military service. "Just as the BVA must point to a medical basis other than its own unsubstantiated opinion, ... [the] appellant cannot meet his initial burden by relying upon his own ... or his [friends'] ... opinions as to medical matters." *Grottveit*, 5 Vet.App. at 93 (citations omitted). Therefore, notwithstanding the Board's determination to the contrary, the appellant's claim for service connection for bronchial asthma is not well grounded.

### III. Conclusion

Upon consideration of the record, the appellant's informal brief, and the Secretary's brief, the appellant has not presented a claim on which, in contemplation of law, relief could be granted. *Id.* Accordingly, there was no claim to adjudicate on the merits, and the RO and Board erred in not initially denying the claim as lacking a well-grounded basis. *Id.* Therefore, the February 14, 1992, decision of

the Board of Veterans' Appeals is VACATED and REMANDED with instructions to vacate the RO decision.

STEINBERG, Judge, concurring in part and dissenting in part:

I concur in the result that the bronchial-asthma claim was not well grounded. However, for the reasons stated separately in *Green (John H.) v. Brown,* 5 Vet.App. 83, 85–87 (1993) (per curiam order) (Kramer and Steinberg, JJ., dissenting separately and jointly to denial of en banc review), I would not here vacate the February 14, 1992, Board of Veterans Appeals' (BVA or Board) decision. Because there are currently two parallel lines of Court precedent as to the correct remedy for the Court to employ when confronted with a case in which a claim was improperly not found not well grounded by the Board or was improperly reopened by the Board,[1] I would here affirm on the basis that even though the Board should not have reached the merits on the bronchial-asthma claim its having done so was not an error prejudicial to the appellant under 38 U.S.C. § 7261(b).[2]

In addition to the concerns stated in the *Green* dissents about the vacating approach employed by the majority here, that approach appears to present the possibility of disparate results for identically situated VA claimants and, therefore, to produce inequities in the VA adjudication process. In the instant case, the majority vacates the February 1992 BVA decision. That means that there will have been no prior determination of that claim,[3] and the next time the claimant advances that same claim, even if there is no additional evidence, it would be an original claim and not a claim to reopen. Contrast that result with a case with identical facts where the Court affirms the BVA decision that the claim was not well grounded (as was done, for example, in *Selley v. Brown,* 6 Vet.App. 196, 199 (1994)), or where the Court affirms the BVA decision on the merits as nonprejudicial error, as I would do here. In that situation, the claimant would, as I read current caselaw, apparently have to produce new and material evidence to reopen the claim.[4]

Under *Grottveit, supra,* the Court, in vacating where the BVA had incorrectly found a claim well grounded, stated its purpose to "allow appellant to begin, if he can, on a clean slate"—that is, without the need for "new and material evidence [that] would [otherwise] be needed for reopening the claim" should it be brought again. *Grottveit,* 5 Vet. App. at 93. In *Grivois v. Brown,* 6 Vet.App. 136, 139 (1994), the Court recently cautioned: "[I]mplausible claims should not consume the limited resources of the VA and force into even greater backlog and delay those claims which—as well grounded—require adjudication." One wonders whether this Court does not have a concomitant duty to avoid imposing new adjudication rules and steps that would seem likely to produce greater confu-

1. *Compare Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (affirming); *Thompson (Charles) v. Derwinski,* 1 Vet.App. 251, 254 (1991) (affirming), *with Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) (vacating); *McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993) (vacating).

2. *See Green v. Brown,* 4 Vet.App. 382, 384 (1993) (Steinberg, J., dissenting); *McGinnis,* 4 Vet.App. at 244–47 (Steinberg, J., concurring in part and dissenting in part) (citing, at page 245, 16 cases affirming on the basis of non-prejudicial error).

3. The majority opinion directs the Board to direct the VA regional office (RO) to vacate its April 1991 decision, which also failed to find the bronchial-asthma claim not well grounded.

4. The *McGinnis* vacating approach as to claims which the Board incorrectly reopened may present similar possibilities of disparate treatment among similarly situated VA claimants in terms of whether a VA claimant seeking to reopen a finally disallowed claim, on the basis of "new and material evidence", could use as "new" evidence all the evidence secured since the last merits disallowance, including evidence considered and specifically found not to be new and material in an otherwise unreviewable RO or BVA final decision in the interim as part of one or more **unsuccessful** attempts to reopen. *See McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993); 38 U.S.C. §§ 7104(b), 7105(c), 5108; *Suttmann v. Brown,* 5 Vet.App. 127, 135–36 (1993) (applying to claims finally denied by RO under section 7105(c) the section 5108 provisions for the reopening, on the basis of new and material evidence, of claims finally denied by BVA). No case has yet so held although the opportunity has been present for the Court to do so. *See Person v. Brown,* 5 Vet.App. 449 (1993); *Smith (Albert) v. Derwinski,* 3 Vet.App. 205 (1992); *Merritt v. Brown,* 6 Vet.App. 174 (1993) (mem. decision).

sion and delay in a VA adjudication system that is currently experiencing exponential growth in backlog and decision time. *See* 1993 REP. OF THE CHAIRMAN OF THE BVA, pt. 2, at 33.[5] I do not understand the basis for rewarding with a *Grottveit* "clean slate" a VA claimant who has imposed on the already overburdened VA adjudication system a frivolous claim. *See* BLACK'S LAW DICTIONARY 668, 843 (6th ed. 1990) (defining "frivolous action" as "[g]roundless lawsuit with little prospect of success").

On May 10, 1994, the Court entered an order consolidating *Edenfield v. Brown*, No. 92–1263, and *Smith (George) v. Brown*, No. 92–1369, 6 Vet.App. 432, and inviting supplemental and amicus memoranda on, inter alia, the question of the proper remedy with respect to cases in which the BVA had incorrectly determined that a claim was well grounded or that new and material evidence for purposes of reopening had been secured. Perhaps the resolution of those cases will provide satisfactory answers to the question posed in that May 10 order, this opinion, and the *Green* dissents. Since I continue to have serious reservations about the vacating remedy, I am unable to concur in its application by the Court here. Also, while agreeing that the claim was not well grounded, I do not join in the lengthy rules-of-evidence essay attempting to amplify the Court's altogether satisfactory analysis and holding in *Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992), as to the competency of lay testimony depending on the purpose for which such testimony is presented.

---

5. The Chairman of the BVA is required to file an annual report pursuant to 38 U.S.C. § 7101(d), which provides in part that "[a]fter the end of each fiscal year, the Chairman shall prepare a report on the activities of the Board during that fiscal year and the projected activities of the Board for the fiscal year during which the report is prepared and the next fiscal year." According to the latest report as to BVA adjudications:

> Response time (the projected number of days it would take the Board to decide a pending appeal) increased from 130 days in F[iscal] Y[ear] *1991* to 240 days in FY *1992*. In FY 1993, that figure reached an all-time high of 466 days.

Without any significant changes in the situation, based on current data, it is projected that BVA's average response time will be 725 days, essentially two years, in FY 1994 and 945 days, or two years and seven and one half months, in FY 1995.

1993 REP. OF THE CHAIRMAN OF THE BVA, pt. 2, at 33. More recently, the Chairman of the Senate Veterans' Affairs Committee, Senator Rockefeller, stated: "Based on information in the first quarter of fiscal year 1994, the BVA currently estimates that by the end of this fiscal year, that time [the *466 days for decision time*] *will increase to 1,843 days*—5 years." 140 Cong.Rec. S2504 (daily ed. Mar. 8, 1994) (statement of Sen. Rockefeller).