Citation Nr: 1134096 
Decision Date: 09/12/11 Archive Date: 09/22/11

DOCKET NO. 04-37 821A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for a dental disability, for purposes of outpatient dental treatment only.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

E. Woodward Deutsch, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1953 to April 1955. 
This matter comes before the Board of Veterans' Appeals (Board) from a January 2004 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) that denied the benefits sought on appeal. 

Pursuant to the Veteran's request, a Travel Board hearing was scheduled for March 2007. However, the Veteran did not report for that hearing or request that it be rescheduled. Thus, his hearing request is deemed withdrawn. 38 C.F.R. § 20.704 (2010). 

In an October 2007 decision, the Board denied the Veteran's claim. The Veteran appealed that Board denial to the United States Court of Appeals for Veterans Claims. Pursuant to a Joint Motion for Partial Remand, a December 2008 Order of the Court remanded the claim for readjudication in accordance with the Joint Motion for Partial Remand. In May 2009, July 2010, and December 2010, the Board remanded the claim for additional development.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002 & Supp. 2011).


FINDING OF FACT

The evidence of record is at least in equipoise as to whether the Veteran has a dental disability of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28 that was caused or aggravated during his period of military service and manifested after 180 days of active duty. 


CONCLUSION OF LAW

Resolving all reasonable doubt in the Veteran's favor, the criteria for service connection for a dental disability of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28, for purposes of outpatient dental treatment only, have been met. 38 U.S.C.A. §§ 1110, 1131, 1721, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, 3.381, 4.150, 17.161 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Service Connection

Service connection generally requires evidence of a current disability with a relationship or connection to an injury or disease or some other manifestation of the disability during service. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Degmetich v. Brown, 104 F. 3d 1328 (1997); Cuevas v. Principi, 3 Vet. App. 542 (1992); Rabideau v. Derwinski, 2 Vet. App. 141 (1992). 

When no preexisting condition is noted at the time a Veteran enters service, the presumption of soundness arises and he is presumed to have been sound upon entry. The presumption of soundness may only be rebutted by clear and unmistakable evidence that the Veteran's disability was both preexisting and not aggravated by service. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); 38 C.F.R. § 3.304(b) (2010).

Service connection for certain chronic disorders will be rebuttably presumed if they are manifest to a compensable degree within one year following active service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.307, 3.309 (2010). However, the Veteran's dental disorder is not a condition for which service connection may be granted on a presumptive basis.

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d) (2010).

For the showing of chronic disease in service, there must be a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. If chronicity in service is not established, evidence of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303(b) (2010). Service connection may also be granted for a disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2010).

It is the Board's principal responsibility to assess the credibility, and therefore the probative value of proffered evidence of record in its entirety. Owens v. Brown, 7 Vet. App. 429 (1995); Elkins v. Gober, 229 F.3d 1369 (Fed. Cir. 2000); Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997); Guimond v. Brown, 6 Vet. App. 69 (1993); Hensley v. Brown, 5 Vet. App. 155 (1993). In determining whether evidence submitted by a Veteran is credible, the Board may consider internal consistency, facial plausibility, and consistency with other information submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498 (1995). The Board is not required to accept an appellant's uncorroborated account of his active service experiences. Wood v. Derwinski, 1 Vet. App. 190 (1991).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107 (West 2002 & Supp. 2011); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Service connection for treatable carious teeth, replaceable missing teeth, dental or alveolar abscesses, and periodontal disease will be considered service connected solely for the purpose of establishing eligibility for outpatient dental treatment, if they are manifested after 180 days of service, in accordance with 38 C.F.R. § 17.161. 38 C.F.R. § 3.381(a) (2010).

In determining service connection, the rating activity will consider each defective or missing tooth and each disease of the teeth and periodontal tissues separately to determine whether the condition was incurred or aggravated in the line of duty during active service. When applicable, the rating activity will determine whether the condition is due to combat or other in-service trauma, or whether the Veteran was interned as a prisoner of war. 38 C.F.R. § 3.381(b) (2010). The condition of teeth and periodontal tissues at the time of entry into active duty will be considered. Treatment during service, including filling or extraction of a tooth, or placement of a prosthesis, will not be considered evidence of aggravation of a condition that was noted at entry, unless additional pathology developed after 180 days or more of active service. 38 C.F.R. § 3.381(c) (2010).

The following principles apply to specific dental conditions noted at entry and treated during service:

(1) Teeth noted as normal at entry will be service-connected if they were filled or extracted after 180 days or more of active service.

(2) Teeth noted as filled at entry will be service-connected if they were extracted, or if the existing filling was replaced, after 180 days or more of active service.

(3) Teeth noted as carious but restorable at entry will not be service-connected on the basis that they were filled during service. However, new caries that developed 180 days or more after such a tooth was filled will be service-connected.

(4) Teeth noted as carious but restorable at entry, whether or not filled, will be service-connected if extraction was required after 180 days or more of active service.

(5) Teeth noted at entry as non-restorable will not be service-connected, regardless of treatment during service.

(6) Teeth noted as missing at entry will not be service-connected, regardless of treatment during service.

38 C.F.R. § 3.381(d) (2010).

Additionally, teeth extracted because of chronic periodontal disease will be service connected only if they were extracted after 180 days or more of active service. 38 U.S.C.A. § 1712 (West 2002); 38 C.F.R. § 3.381(f) (2010). However, ratings for tooth loss apply only to bone loss through trauma or disease such as osteomyelitis, and not to the loss of the alveolar process as a result of periodontal disease, since such loss is not considered disabling. 38 C.F.R. § 4.150, Diagnostic Code 9913 (2010). Service connection may be also granted for any dental condition that resulted from combat or other in-service trauma. 38 C.F.R. §§ 3.381, 3.382 (2010)

The following will not be considered service-connected for treatment purposes: (1) calculus; (2) acute periodontal disease; (3) third molars, unless disease or pathology of the tooth developed after 180 days or more of active service, or was due to combat or in-service trauma; and (4) impacted or malposed teeth, and other developmental defects, unless disease or pathology of these teeth developed after 180 days or more of active service. 38 C.F.R. § 3.381(e) (2010).

The Veteran contends that his current dental problems are etiologically related to his period of active duty. Specifically, he asserts that he had several teeth pulled during service and that the experience traumatized him to the extent that he did not seek dental care for several decades. 

At the outset, the Board acknowledges that the Veteran's service medical records have been determined to be unavailable. In July 2006, the RO requested his complete records from the National Personnel Records Center (NPRC). However, in a written reply dated the following month, the NPRC indicated that none of the Veteran's service medical or surgeon general office records could be located. The NPRC further indicated that those records were presumed to have been destroyed in a 1973 fire. Thereafter, in February 2007, the RO issued a formal finding that no additional service medical records were unavailable.

When a Veteran's records have been determined to have been destroyed, or are missing, VA has an obligation to search for alternative records that might support the Veteran's case. Cuevas v. Principi, 3 Vet. App. 542 (1992). Here, VA met that obligation by making multiple attempts to secure the service medical records from a variety of sources, including the Veteran himself. Specifically, the RO sent the Veteran correspondence requesting he submit all service records in his possession. The RO also directed the Veteran to provide additional information concerning the dates of his alleged in-service treatment that would permit a more detailed search of VA's records repository. However, the Veteran did not submit any records of in-service dental treatment. Nor did he provide any additional information to enable VA to obtain such records on his behalf. No other alternative sources of records have been identified and the Veteran has been duly informed of the unavailability of additional records. In light of the RO's formal finding, the Board concludes that any additional efforts to obtain such records would be futile.

Where service medical records are unavailable, there is a heightened obligation on the part of VA to explain findings and conclusions and to consider carefully whether reasonable doubt exists to resolve in favor of the Veteran. Cuevas v. Principi, 3 Vet. App. 542 (1992); O'Hare v. Derwinski, 1 Vet. App. 365 (1991). The reduced evidentiary burden only applies to the question of service incurrence, and not to the question of either current disability or nexus to service; both of those inquiries generally require competent medical evidence. Brock v. Brown, 10 Vet. App. 155 (1997); Libertine v. Brown, 9 Vet. App. 521 (1996); Beausoleil v. Brown, 8 Vet. App. 459 (1996).

There are no pre-service clinical records or other evidence showing that the Veteran had any dental problems that clearly and unmistakably predated service. Accordingly, the Veteran is presumed to have been sound upon entry for the purposes of his dental treatment claim. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); 38 C.F.R. § 3.304(b) (2010). However, his service medical records are unavailable and there is no other contemporaneous evidence of in-service tooth extractions or related dental treatment. 

The pertinent post-service medical evidence shows that, in May 1988, the Veteran visited a private dentist after foregoing dental treatment for many years. Following a clinical examination, the dentist determined that the eight of Veteran's teeth needed to be removed and replaced with removable upper and lower denture plates. Accordingly, the next month the Veteran underwent root-tip extraction of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28. He was noted to have tolerated the procedure well and to have recovered with the aid of painkillers. Subsequent private dental records show the Veteran continued to seek regular outpatient treatment for tooth decay and related dental problems. 

In support of his claim for dental treatment, the Veteran submitted a June 2003 written statement from the same private dentist who had initially treated him in May 1988. That dental treatment provider confirmed that he had extracted eight "unrestorable teeth" and constructed upper and lower partial dentures for the Veteran. Such corrective treatment, the dentist added, had been necessitated by the "terrible condition" of the Veteran's mouth at the time he initiated treatment. Significantly, that dentist also opined that the Veteran's dental problems had likely developed while he was still in service and that, for decades after leaving the military, he had avoided dental treatment "because he had been so badly traumatized by the care he received there." 

Pursuant to the Board's initial remand, the Veteran was afforded an August 2009 VA dental examination in which he was assessed as having multiple missing teeth. However, the VA nurse practitioner who performed the examination could not determine without resorting to speculation whether the teeth that were extracted during service had caused the Veteran to avoid dental treatment for 30 years. Nor could that examiner determine whether the "eight plus teeth" that the private dentist had reportedly extracted had decayed as a result of the Veteran's military experiences. The Board subsequently determined that the August 2009 VA examiner's report was insufficient for the rating purposes and again remanded the Veteran's claim for an examination and opinion regarding the etiology of his dental condition.

In accordance with that August 2010 remand, the Veteran underwent a follow-up October 2010 VA dental and oral examination in which he was again found to be partially edentulous (missing teeth). As on the previous examination, however, the examiner determined that it was not possible to render an opinion regarding any relationship between the Veteran's current dental status and his military service. The examiner acknowledged the clinical and lay evidence of in-service and post-service tooth extractions, but emphasized that that this was "not necessarily a cause and effect situation." Additionally, the August 2010 examiner opined that the private dentist was not in a position to make assumptions about the underlying causes of the Veteran's dental problems without a proper review of his dental service records. The examiner then observed that the Veteran's post-service dental records showed that he had heavy plaque and tartar deposits and that those conditions had likely existed in service. Next, the August 2010 examiner opined that, while the Veteran's in-service dental problems had likely warranted a diagnosis of periodontal disease, it was impossible to conclusively determine whether that was the underlying cause of his in-service tooth extractions. Similarly, the examiner concluded that the Veteran's in-service dental treatment could not be definitively related to his current dental problems in the absence of dental records. Nevertheless, the examiner opined that, in the absence of evidence sufficient to render a conclusive opinion, it was less likely than not that the Veteran's current dental condition was caused by or a result of his in-service extractions. 

The record thereafter shows that the Veteran's representative took issue with the August 2010 VA examiner's opinion on the grounds that it failed to "afford any credence to the Veteran's lay statements regarding the actual extraction of his teeth," and discounted the private physician's opinion based on a lack of review of the Veteran's claims file. Subsequently, the Board remanded the Veteran's claim for an additional VA dental examination and etiological opinion.

The ensuing January 2011 VA examination was conducted by a VA oral and maxillofacial surgeon who had not previously examined the Veteran. In addition to clinically inspecting his teeth and reviewing the claims file, the examiner noted the Veteran's lay history of in-service dental trauma and subsequent avoidance of dental treatment over a period of several decades. 

After confirming the diagnoses rendered by his predecessors, the January 2011 VA examiner assessed the Veteran with additional dental disorders, including multiple teeth abrasions, moderate generalized gingival inflammation, generalized 3-4 millimeter periodontal probing depths, and overall poor oral hygiene. Additionally, the VA examiner acknowledged, based on the Veteran's lay statements, that he had likely had dental treatment in service. Nevertheless, the examiner determined that, in the absence of any in-service record of dental treatment, he could only speculate as to what occurred during the Veteran's military duty and the following 30 years. That examiner further determined that such a lack of written documentation effectively weighed against the Veteran's assertions that his current dental problems had begun in service. The examiner acknowledged the Veteran's account of receiving in-service dental care that was so traumatically substandard that he delayed seeking follow-up treatment. However, the examiner essentially dismissed that account without explanation. Similarly, the examiner dismissed the positive nexus opinion rendered by the Veteran's private dentist, observing that it was not supported by any contemporaneous findings of in-service treatment and, thus, was inherently speculative and unreliable. 

An evaluation of the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the examiner's knowledge and skill in analyzing the data, and the medical conclusion reached. The credibility and weight to be attached to such opinions are within the province of the Board as adjudicators. Guerrieri v. Brown, 4 Vet. App. 467 (1993). Gabrielson v. Brown, 7 Vet. App. 36 (1994). Greater weight may be placed on one physician's opinion over another depending on factors such as reasoning employed by the physicians and whether or not and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994). The probative value of a medical opinion is generally based on the scope of the examination or review, and the relative merits of the expert's qualifications and analytical findings, and the probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993).

The Board finds that the June 2003 opinion rendered by the private treating dentist, indicating that the Veteran's dental problems began in the military and worsened as a result of the treatment he received therein, to be both probative and persuasive. Moreover, the Board assigns greater probative value to that opinion than to the subsequent findings of the VA examiners.

The Board acknowledges that the private dentist does not appear to have based the positive nexus opinion on a review of the entire claims file. Nevertheless, the Board observes that claims folder review, as it pertains to obtaining an overview of a claimant's medical history, is not a strict requirement for private medical opinions, and a private medical opinion may not be discounted solely because the opining clinician did not conduct such a review. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Moreover, a private examiner's reliance on statements from the Veteran is not a sufficient basis, in and of itself, to disregard that examiner's opinion. Kowalski v. Nicholson, 19 Vet. App. 171 (2005).

Here, the Board considers it significant that, in addition to relying on the Veteran's statements, the private dentist based the opinion on his long-term treatment of the Veteran. Prejean v. West, 13 Vet. App. 444 (2000) (factors for assessing the probative value of a medical opinion include the physician's access to the claims folder and the Veteran's history, and the thoroughness and detail of the opinion). Moreover, that opinion was supported by a rationale and reflected an understanding of the Veteran's pertinent clinical history. Sklar v. Brown, 5 Vet. App. 140 (1993). Further, that opinion is consistent with the other competent evidence of record, including the Veteran's account of his in-service dental trauma and the post-service records showing extensive treatment for tooth decay and related dental problems.

In contrast, the Board finds that the August 2009 VA examiner's opinion is inherently speculative in nature and, thus, of limited probative value. Tirpak v. Derwinski, 2 Vet. App. 609 (1992); Swann v. Brown, 5 Vet. App. 229 (1993); Bostain v. West, 11 Vet. App. 124 (1998); Obert v. Brown, 5 Vet. App. 30 (1993) (medical opinion expressed in terms of may also implies may or may not and is too speculative to establish medical nexus); Warren v. Brown, 6 Vet. App. 4 (1993) (doctor's statement framed in terms such as could have been is not probative). That examiner declined to render any definitive findings regarding the etiology of the Veteran's dental problems. Therefore, that report is not wholly inconsistent with the positive nexus opinion provided by the private dentist. 

Next, the Board observes that the opinions offered by the August 2010 and January 2011 VA examiners, while couched in negative nexus terminology, are also speculative in nature. Indeed, both examiners admitted that, in the absence of in-service dental records, they could only speculate on the etiology of the Veteran's current dental problems. Thus their opinions, like that of the August VA examiner, are lessened in probative value. Tirpak v. Derwinski, 2 Vet. App. 609 (1992). Moreover, the Board considers it significant that the August 2010 VA examiner's opinion did not take into account the Veteran's lay assertions regarding his in-service dental problems and subsequent traumatic experiences, which caused him to delay seeking additional treatment. Further, while the January 2011 VA examiner did note those lay assertions, that examiner declined to reconcile them with the negative nexus opinion. Such a lack of consideration of pertinent lay evidence further reduces the probative weight of both VA opinions. Dalton v. Nicholson, 21 Vet. App. 23 (2007) (if an examiner relied solely on the absence of evidence in the service medical records to provide a negative opinion and did not consider lay evidence of in-service symptomatology, the opinion is inadequate).

Notwithstanding the inadequacies of the above VA examination reports, the Board considers it unnecessary to obtain an additional VA examination and etiological opinion with respect to the issue on appeal. Indeed, such additional development in this instance would only result only in additional delay with no benefit to the Veteran. Sabonis v. Brown, 6 Vet. App. 426 (1994); VAOPGCPREC 5-04 (2004), 69 Fed. Reg. 59,989 (2004). That is because the evidence already of record is sufficient to grant the Veteran's dental treatment claim. 

The pertinent evidence indicates that the extractions of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28 were necessitated by the dental problems and ensuing treatment that the Veteran experienced in service. Indeed, the private dentist who performed the above extractions expressly indicated that the Veteran's underlying dental problems first manifested in service and were exacerbated by the dental treatment he received therein. For the reasons noted above, the Board has afforded that opinion great probative weight.

Additionally, the Board finds considers it significant that Veteran has submitted a detailed account of his in-service dental problems and their lasting impact on his subsequent oral health. While a lay person, the Veteran is competent to testify about in-service tooth pain and related symptoms of which he has personal knowledge. Layno v. Brown, 6 Vet. App. 465 (1994). Similarly, he is competent to report having undergone an in-service dental procedure, which left him traumatized and effectively dissuaded him from seeking additional treatment for many years. Jandreau v. Nicholson, 492 F.3d 1372 (2007). Additionally, the Board considers the Veteran's statements to be credible as they are internally consistent and supported by the competent evidence of record, in particular the private dentist's opinion. Caluza v. Brown, 7 Vet. App. 498 (1995).

For the foregoing reasons, the Board finds that evidence of record is at the very least in equipoise with respect to whether service connection, for dental treatment purposes, is warranted for a dental disability manifested by extractions of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28. Those extractions have been causally related to the dental condition and ensuing treatment the Veteran received during his period of active duty. Moreover, where, as here, the Veteran's service medical records are lost or missing, VA has a heightened duty resolved reasonable doubt in his favor. Cuevas v. Principi, 3 Vet. App. 542 (1992); O'Hare v. Derwinski, 1 Vet. App. 365 (1991). However, the evidence of record does not relate any disability of any other teeth to the Veteran's service. Therefore, the Board finds that service connection for treatment purposes can be granted only for those teeth.




Accordingly, resolving all reasonable doubt in favor of the Veteran, the Board finds that service connection for a dental disability of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28, for the purpose of outpatient dental treatment must be granted. 38 U.S.C.A. 5107 (b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for a dental disability of teeth numbers 2, 4, 5, 6, 7, 11, 12, and 28 is granted, for purposes of outpatient dental treatment only.



____________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs