Citation Nr: 1806325 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 06-17 975A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUE

Entitlement to service connection for a left foot disability, to include as secondary to service-connected left knee internal derangement with traumatic degenerative joint disease.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

C. J. Houbeck, Counsel
INTRODUCTION

The Veteran had active service from June 1960 to June 1963 and from October 1963 to October 1966.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an August 2005 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which declined to reopen a final previously denied claim on the basis of the absence of new and material evidence. Jurisdiction of the appeal currently resides with the RO in Chicago, Illinois.

The Board reopened the claim in an August 2010 determination and remanded the matter for additional development. The claim again was remanded by the Board in July 2012, September 2013, March 2014, June 2016, and July 2017. The matter again is before the Board. Based on the completion of the requested development, the Board finds that there has been substantial compliance with its remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

In April 2010, the Veteran and his spouse testified at a Travel Board hearing before a Veterans Law Judge (VLJ) who is no longer with the Board. A transcript of the hearing is of record. The Veteran was offered the opportunity for another hearing before a VLJ who would decide his case in a February 2015 letter. The Veteran did not respond to that letter or otherwise request a new hearing. As such, the Board finds that no hearing is required.
 
This appeal was processed using the Veteran's Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. Accordingly, any future consideration of the case should take into consideration the existence of these electronic records.





FINDING OF FACT

A left foot disability was not incurred in service, may not be presumed to have been incurred in service, is not otherwise related to service, and was not caused or aggravated by a service-connected disability.


CONCLUSION OF LAW

Entitlement to service connection for a left foot disability is not warranted. 38 U.S.C. §§ 1101, 1110, 1131, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.310 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duty to Notify and Assist

Neither the Veteran nor his representative has identified any potential shortcomings in fulfilling VA's duty to notify and assist that has not been corrected by prior Board remands. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). For the above reasons, the Board finds the duties to notify and assist have been met, all due process concerns have been satisfied, and the appeal may be considered on the merits. 

Service Connection

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131 (2012). 

Certain diseases, to include arthritis, may be presumed to have been incurred in service when manifest to a compensable degree within one year of discharge from active duty. 38 U.S.C. § 1112 (2012); 38 C.F.R. §§ 3.307, 3.309 (2017). As there is no evidence or claim that the Veteran was diagnosed with arthritis of the left foot within one year of service, the above provision is not applicable.

To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

In the alternative, service connection is also warranted for disability proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show: (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id.; see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc).

The Veteran contends that his current left foot disabilities were caused or aggravated by his service-connected left knee disability.

The Veteran's service treatment records include an April 1963 Report of Medical History prior to separation from his first period of active service. Therein, the Veteran reported a history of foot trouble. The specific foot trouble was not noted, however, other than that it had not been treated. In a contemporaneous Report of Medical Examination the feet were found to be normal. In an October 1963 Report of Medical History prior to entry into his second period of active service, by contrast to his reports in April 1963, the Veteran denied a history of foot trouble and described his health as excellent. Contemporaneous examination of the feet also was normal. In November 1964, the Veteran fell on the lateral aspect of the left foot while playing basketball, with subsequent pain in the anterior leg. There also was increased pain when putting weight on the left heel. On examination, the ankle and knee were normal. The ultimate assessment was a contusion of the left leg, with no diagnosis listed for the foot. The Veteran's October 1966 Report of Medical Examination prior to separation from service included a normal examination of the feet. 

In December 2002, the Veteran reported having broken his left foot at some point after losing his job in January 2002. In January 2003, the Veteran complained of chronic, achy left foot pain for the last 36 years. Records otherwise document ongoing problems with a diabetic ulcer of the foot.

July 2008 x-rays of the left foot showed advanced degenerative changes at the first metatarsophalangeal joint with detached osteophytes and overlying soft tissue prominence, as well as degenerative changes to the midfoot. February 2009 imaging showed an apparent soft tissue ulcer on the plantar surface underlying the first toe of the interphalangeal joint, as well as severe degenerative changes at the first metatarsophalangeal joint and degenerative osteophytosis dorsally at the metatarsal-tarsal junctions.

In a Daily Activity Questionnaire as part of his claim for benefits from the Social Security Administration, the Veteran reported that he had bilateral feet and hand problems due to working for 30 years in a steel mill. 

During his April 2010 Board hearing, the Veteran asserted that his left foot problems were secondary to his service-connected left knee disability. He contended that a "neurosurgeon at Hines Hospital" had told him that his problems with the left foot were due to his service-connected knee disability. 

A November 2010 VA examination report is of record. The examiner noted review of the claims file. The Veteran discussed injuring his left knee in 1965 while serving in Germany. At that time, he also had back pain that radiated into the lower extremities. The Veteran did not discuss any problems with his left foot in service. Examination showed a diabetic skin ulcer of the left great toe. The examiner indicated that the Veteran's left foot disorder, specifically the diabetic ulcer of the great toe, was less likely than not caused by the service-connected left knee disability. The rationale stated that the left foot disability was completely related the Veteran's diabetes mellitus and the diabetic ulcer that subsequently developed.

A September 2012 VA medical opinion noted review of the claims file by the physician. The physician concluded that it was less likely than not that the Veteran's left foot disabilities were incurred in or caused by service. The rationale, however, discussed the Veteran's secondary service connection claim. Specifically, the physician noted that there was no medical evidence that involvement of the left knee cause an arthritic-related condition in the foot. In addition, any left knee pathology could possibly stress the opposite foot, but not the foot on the same side. As such, a secondary relationship could not be established. Moreover, the Veteran's ulcer was a complication of his diabetes and had no relationship to his knee disability. As such, it was less likely that the osteoarthritic foot disability, altered gait, or toe ulcer were related to the service-connected left knee disability.

January 2014 x-rays of the left foot showed severe degenerative changes to the first metatarsophalangeal joint, a large cyst in the distal end of the proximal first phalanx medially, and small vessel calcifications. 

In an October 2013 VA medical opinion, the physician noted review of the claims file. The physician concluded that it was not at least as likely as not that the left foot disability was related to either of the Veteran's periods of active service. The rationale noted an in-service injury to the left knee playing basketball, but that there was not any severe injury or prolonged treatment of the left foot in service. In addition, the physician found that it was not at least as likely as not that the Veteran's diagnosed left foot disabilities were caused by his service-connected left knee disability. The rationale noted that there was no clear evidence of any severe gait disturbance in service or soon after leaving service. In fact, after discharge the Veteran worked in a steel mill for 30 years as a crane operator, which would require climbing a ladder and getting into a crane cab. As such, the Veteran obviously did not have a severely abnormal foot or he would not have been able to perform that kind of work for so many years. Instead, his left foot disability was likely due to an incident in 1984 where there was a fire and the Veteran had to jump from the crane. Similarly, it was not at least as likely as not that any altered gait and asymmetric stress imposed by the Veteran's service-connected left knee internal derangement with traumatic degenerative joint disease aggravated the left foot disabilities. The rationale noted that an abnormal gait would not affect just one foot. Instead, the Veteran's left foot condition was more likely related to his diabetic ulcer with skin graft of the left great toe. In addition, it was not at least as likely as not that the altered gait and asymmetric stress from the left knee disability aggravated the recurrent soft tissue ulcer affecting the left foot. The rationale indicated that recurrent soft tissue ulcers affecting the left foot were due entirely to the diabetes mellitus and unrelated to the knee disability. An abnormal gait did not cause diabetic ulcers of the foot or worsen the condition. The ulcer was due to an abnormal blood supply to the foot caused by diabetes. 

An April 2014 VA medical opinion is of record. The reviewing physician noted review of the claims file. The physician concluded that it was less likely than not that the Veteran's left foot disabilities were proximately due to or the result of the Veteran's service-connected left knee disability. The rationale was that the etiology of the Veteran's left foot disability was diabetes mellitus, type II, with diabetic vascular disease of the foot. In 2008, the Veteran was diagnosed with a diabetic ulcer of the foot that had been present for at least 6 years. Over the years, the diabetic ulceration had worsened. As to the hallux rigidus and degenerative joint disease, there was no severely abnormal gait due to the service-connected left knee disability that could have placed undue pressure on the Veteran's left foot. There was no clear documentation of any severe gait disturbance in service or soon after leaving service. In fact, after being discharged from service in 1966, the Veteran worked at a steel mill for 30 years as a crane operator. Crane operators were required to climb a ladder to get into the crane cab, so the Veteran obviously did not have a severely abnormal foot or he would not have been able to perform that kind of work for so many years.

A February 2015 VA podiatry clinic note included the Veteran's denial of numbness or tingling in the feet. There was a noted history of lower extremity neuropathic ulcers. The assessment included diabetes mellitus with peripheral neuropathy, left foot ulcer, bilateral hallux limitus, and bilateral pes planus. August 2015 x-rays showed severe degenerative to the first metatarsophalangeal joint, early hammertoe deformities, and degenerative joint disease of the midfoot and hindfoot. 

An October 2015 VA examination report for the low back is of record. Therein, the Veteran reported that his left foot, right foot, and both hands were heavily irritated from 30 years working in a steel mill. 

Treatment records document ongoing complaints of bilateral foot pain with a diagnosis of bilateral moderate peripheral vascular disease with digital ischemia in the left foot. VA treatment records also continued to note intermittent problems with foot ulcers associated with infection. 

An August 2017 VA medical opinion stated that the left foot conditions were not service connected and that the ulcer treatment in 2008 and arthritis of the left foot were not related to the Veteran's service. A September 2017 VA medical addendum opinion from the same physician is of record. The physician noted review of the claims file and indicated that the Veteran's in-service injury had nothing to do with his subsequent treatment in 2008 for the left foot and that there was no carryover from the in-service injury. Although the rationale in this opinion was brief, it is consistent with multiple earlier opinions finding no causative relationship to the November 1964 injury or cause or aggravation by the left knee disability. Therefore, there has been substantial compliance with the Board's previous remand orders. 

Thus, the Board notes that the Veteran has current diagnoses of multiple left foot disabilities. Therefore, the crucial inquiry is whether any of these disabilities was incurred in service, are otherwise related to service, or were caused or aggravated by a service-connected disability. The Board concludes that the preponderance of the evidence indicates they were not.

In reaching that conclusion, the Board finds the VA examination reports and addenda, read in aggregate, of considerable probative weight. The physicians clearly attributed the entirety of the Veteran's problems with diabetic foot ulcers to his non-service connected diabetes mellitus, type II. In context, it is clear that the physicians found no evidence that the service-connected left knee disability aggravated the diabetic foot ulcer because the physicians clearly attributed the entirety of the problem to his diabetes. As to the Veteran's orthopedic problems of the feet, including multiple areas of degenerative joint disease, the examiners stated that there was no connection between such problems and the Veteran's reported in-service foot troubles and that they were not caused or aggravated by the service-connected left knee disability because a left knee disability would not put additional stress on the same foot and the knee did not result in an altered gait to such a significant extent that it would cause or aggravate the foot disabilities. The Board finds this these conclusions to be the most probative evidence of record.

The Board has considered the Veteran's assertions during the April 2010 Board hearing that a VA neurosurgeon told him that his back, right knee, and right and left foot problems were due to his service-connected left knee disability. To the extent that the Veteran is competent to relate such an opinion, the Board finds that the above VA medical opinions to carry significantly greater probative weight, as the neurosurgeon's reported opinion (as related by the Veteran) includes no rationale or basis for the conclusions reached. As such, the Board affords the purported neurosurgeon's opinion very limited probative weight. 

The Board is aware of the provisions of 38 C.F.R. § 3.303(b), relating to chronicity and continuity of symptomatology in establishing service connection and that such provisions apply to those chronic conditions, such as arthritis, specifically listed in 3.309(a). See Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013). However, arthritis of the left foot was not "noted" in service or for many decades after service. In addition, Veteran did not have characteristic manifestations sufficient to identify the disease entity. The Board acknowledges the Veteran's reports in January 2003 of a 36 year history of left foot pain, which would date back to within one year of separation from service. However, given his decades of work in a steel mill and that he had a broken foot between his separation from service and his initial diagnosis of arthritis the Board affords far greater weight to the opinions of the VA medical evidence of record and concludes that the evidence is against a finding of continuity of symptomatology for the Veteran's left foot arthritis dating back to service.

As to the Veteran's general contentions that his left foot disabilities are secondary to his service-connected left knee disability or are otherwise related to his active service, the Board finds the opinion of the competent health care provider to be the most probative evidence of record as to the relationship between the Veteran's left foot disability and his active service and/or service-connected left knee disability. Although the Veteran may be competent to report pain and other physically observable symptoms, the Board is of the opinion that the VA medical opinions (read as a whole) ultimately outweigh the Veteran's contentions as to etiology, as the examiner has a greater level of medical education, training, and experience. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions); see also Layno v. Brown, 6 Vet. App. 465 (1994). 

In summary, the most probative evidence of record is against finding that the Veteran's left foot disabilities had their onset in service, within one year of service, are otherwise related to service, or were caused or aggravated by his service-connected left knee disability. In light of the evidence, the Board concludes that the preponderance of the credible evidence is against the claim, and that service connection for a left foot disability is not warranted. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim must be denied. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001).


ORDER

Entitlement to service connection for a left foot disability is denied.



____________________________________________
J. W. FRANCIS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs