﻿Citation Nr: AXXXXXXXX
Decision Date: 11/08/18 Archive Date: 11/07/18

DOCKET NO. 180823-127
DATE: November 8, 2018
ORDER
Entitlement to service connection for a respiratory disorder, to include obstructive ventilatory disorder, is granted.
Entitlement to service connection for sleep apnea is granted.
REMANDED
Entitlement to an evaluation in excess of 10 percent for internal derangement of the left knee from May 22, 2015 to July 9, 2018 is remanded.
FINDINGS OF FACT
1. Resolving all reasonable doubt in favor of the Veteran, the evidence demonstrates that his currently diagnosed mild obstructive ventilatory disorder began during a period of his active duty service. 
2. Resolving all reasonable doubt in favor of the Veteran, the evidence demonstrates that his currently diagnosed obstructive sleep apnea began during a period of his active duty service. 
CONCLUSIONS OF LAW
1. The criteria for entitlement to service connection for a respiratory disorder, to include mild obstructive ventilatory disorder, have been met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303.
2. The criteria for entitlement to service connection for sleep apnea have been met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty in the U.S. Army from March 1976 to February 1979, from January 2004 to December 2004, from March 2005 to August 2005, from September 2007 to November 2008, from August 2009 to November 2010, and from July 2012 to October 2013.
These matters come before the Board of Veterans’ Appeals (Board) on appeal from a July 2018 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO).
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
Duties to Notify and Assist
Pursuant to the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159.
Neither the Veteran nor his/her representative have raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).
Service Connection
Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Generally, service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).
A layperson is competent to report on the onset and history of his or her current symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 
1. Entitlement to service connection for a respiratory disorder, to include obstructive ventilatory disorder
The Veteran contends that his respiratory problems developed due to his in-service exposure to environmental hazards, such as burn pits, burning trash, and fine dust particles, while serving in Iraq and Afghanistan. He said that his symptoms first began following his initial deployment to Iraq in 2004 and after each subsequent deployment, his respiratory problems would become worse. He said he sought treatment for his respiratory problems on multiple occasions both during and after service. See May 2015 statement and July 2015 VA examination. 
In a May 2015 statement from the Veteran’s wife, she corroborated the Veteran’s reported exposure to environmental hazards. She also reported that when he returned from serving in Iraq in 2004, the Veteran had symptoms of shortness of breath and uncontrollable coughing, which were being treated with an inhaler. 
The question before the Board is whether the Veteran’s currently diagnosed respiratory disorder is etiologically related to service. Based on a careful review of all the subjective and clinical evidence, and resolving all reasonable doubt in favor of the Veteran, the Board finds that his currently diagnosed mild obstructive ventilatory disorder began during a period of his active duty service. 
The evidence shows that the Veteran has a current diagnosis for mild obstructive ventilatory disorder of the asthma type. See July 2015 VA examination. 
At his July 2015 VA examination, the VA examiner found that the Veteran’s currently diagnosed mild obstructive ventilatory disorder was less likely than due to active duty service. The VA examiner found that his 2009 pulmonary function test did not support a diagnosis for asthma, that his June 2015 spirometry supported a diagnosis for mild asthma, and that there was no objective evidence to support a diagnosis for asthma due to active duty service. 
However, according to a July 2010 service treatment record (STR), the Veteran was diagnosed with asthma. 
A January 2011 Post-Deployment Health Re-Assessment reflects the Veteran’s reported trouble breathing related to his deployment to Iraq. 
VA treatment records from 2007 to 2014 document the Veteran repeated VA clinic visits complaining of respiratory problems due to exposure to environmental hazards while deployed. 
The Board finds that the Veteran’s report of his exposure to environmental hazards during active duty service is competent and credible based on the overall record. 
Resolving all reasonable doubt in favor of the Veteran, and taking into consideration the competent and credible lay statements attesting to the Veteran’s history of respiratory problems during active duty service and the July 2010 STR diagnosing asthma during a period of active duty service, the Board finds that the evidence is at least in equipoise that his currently diagnosed mild obstructive ventilatory disorder began during active duty service. Therefore, the Veteran’s service connection claim for mild obstructive ventilatory disorder must be granted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
2. Entitlement to service connection for sleep apnea
The Veteran contends that his sleep apnea developed during active duty service as a result of his in-service exposure to environmental hazards, such as burn pits, fine dust, dust storms, vehicle exhaust and fumes, and petroleum products, while serving in Iraq and Afghanistan. See October 2017 Independent Medical Evaluation (IME). 
The question before the Board is whether the Veteran’s sleep apnea is etiologically related to active duty service. Based on a careful review of all the subjective and clinical evidence, and resolving all reasonable doubt in favor of the Veteran, the Board finds that the his currently diagnosed obstructive sleep apnea began during a period of his active duty service. 
As a preliminary matter, the Board finds that the Veteran’s statements regarding his in-service exposure to environmental hazards while deployed in Iraq and Afghanistan appears to be both competent and credible. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). Military personnel records show that the Veteran served in Iraq and Afghanistan during four separate deployments. VA treatment records in 2007 and 2014 document the Veteran’s reported exposure to burn pits, burning oil and dust during his deployments to Iraq. Thus, the Board finds that the Veteran’s assertions concerning his exposure to environmental hazards during active duty service are consistent with the circumstances of his service. 
The Veteran was diagnosed with obstructive sleep apnea following a sleep study performed in August 2014. See August 2014 VA treatment record. 
The record includes conflicting medical opinions regarding the etiology of the Veteran’s obstructive sleep apnea. With regard to the medical opinions obtained, as with all types of evidence, it is the Board’s responsibility to weigh the conflicting medical evidence to reach a conclusion as to the ultimate grant of service connection. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Board may favor the opinion of one competent medical expert over another if its statement of reasons and bases is adequate to support that decision. Owens v. Brown, 7 Vet. App. 429, 433 (1995). Stated another way, the Board decides, in the first instance, which of the competing medical opinions or examination reports is more probative of the medical question at issue. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 300 (2008).
In July 2015, the Veteran underwent a VA examination conducted by a nurse practitioner. Finding that there was no objective evidence for sleep apnea during active duty service and the Veteran’s diagnosis for sleep apnea was provided 10 months after he separated from service, the VA examiner concluded that the Veteran’s obstructive sleep apnea was not related to his active duty service. Further, the July 2015 VA examiner relied on the Veteran’s gradually increased body mass index from 1976 to 2014 and noted that current medical literature provided that risk factors for sleep apnea include obesity. 
By contrast, the Veteran provided an October 2017 IME conducted by an independent physician, who is a board-certified otolaryngologist and sleep medicine specialist. The independent physician conducted an interview of the Veteran and a review of his claims file as well as pertinent medical literature regarding the association between airborne irritants and obstructive sleep apnea. On that basis, the independent physician concluded that the preponderance of data in the peer-reviewed literature support an association between airborne irritants and obstructive sleep apnea. Based on lay evidence regarding the Veteran’s symptoms, as observed by the Veteran’s wife and fellow soldiers, which demonstrated common signs and symptoms of obstructive sleep apnea, including loud snoring and gasping for breath while sleeping, the independent physician found it was within a reasonable degree of medical certainty that the Veteran experienced obstructive sleep apnea during his active duty service. Further, the independent physician explained that the lack of a diagnosis of obstructive sleep apnea until after service would not preclude the Veteran from having experienced obstructive sleep apnea during service, as it is a chronic disease with a diagnosis often delayed for years due to multiple confounding factors. Finally, the independent physician discussed how while obesity was a risk factor for obesity, only 58 percent of moderate to severe obstructive sleep apnea in adults is attributable to obesity, which highlighted the importance of other contributory factors that impinge on airway anatomy and control. Overall, based on the Veteran’s exposure to airborne irritants, credible statements from the Veteran regarding his obstructive sleep apnea symptoms, his medical records, and the evidence linking airborne irritants and obstructive sleep apnea, the independent physician opined that it was at least as likely as not that the Veteran’s obstructive sleep apnea was caused or aggravated by his service-related exposure to airborne irritants. The independent physician provided an opinion that was based on a review of the Veteran’s claim file, an interview of the Veteran, and citation to medical literature and principles, which was supported by comprehensive conclusions based on the Veteran’s credible reports, reference to the Veteran’s specific medical history and the physician’s expertise in the evaluation and management of obstructive sleep apnea. Accordingly, the Board finds that the October 2017 IME opinion provides the most probative evidence regarding the etiology of the Veteran’s obstructive sleep apnea.
Resolving all reasonable doubt in favor of the Veteran, and taking into consideration the findings of the October 2017 IME and the Veteran’s competent and credible lay statements regarding his in-service exposure to environmental hazards as well as his history of sleep problems, the Board finds that the evidence is at least in equipoise that his current obstructive sleep apnea began during a period of his active duty service. Therefore, the Veteran’s service connection claim for sleep apnea must be granted. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
REASONS FOR REMAND
1. Entitlement to an evaluation in excess of 10 percent for internal derangement of the left knee from May 22, 2015 to July 9, 2018 is remanded.
The issue of entitlement to a higher evaluation for internal derangement of the left knee is remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. The Agency of Original Jurisdiction obtained a July 2015 examination report prior to the July 2018 rating decision on appeal. However, this examination report is inadequate for rating purposes, because it does not comply with the requirements of Sharp v. Shulkin, 29 Vet. App. 26 (2017). In Sharp, the Court determined that it was not sufficient for an examiner to provide that a requested opinion regarding whether the Veteran had additional functional loss during flare-ups or after repeated use over time of a musculoskeletal disability, pursuant to DeLuca v. Brown, 8 Vet. App. 202 (1995), was not possible without resorting to speculation based on the fact that the examination was not performed during a flare or after repetitive use. The Court found that an examiner must do all that reasonably should be done to become informed before concluding that a requested opinion cannot be provided without resorting to speculation. 
In this case, the July 2015 VA examiner determined that the examiner was unable to say without mere speculation whether the Veteran’s pain, weakness, fatigability, or incoordination could significantly limit functional ability with repeated use over a period of time. As the Veteran had not been examined after prolonged repetitive use, the July 2015 VA examiner found that it would be speculative to report whether, pain, weakness, fatigability or incoordination could significantly limit functional ability during prolonged use without objective evidence in the record or when the reported symptoms were incongruent to findings on imaging and clinical examination. Based on the holding in Sharp, a remand is required to obtain a new VA examination of the Veteran’s internal derangement of the left knee. 
The matter is REMANDED for the following actions:
1. Obtain all the outstanding treatment records for the Veteran’s internal derangement of the left knee that are not currently of record. 
2. Schedule the Veteran for an examination to determine the severity of his service-connected internal derangement of the left knee by an appropriate clinician during the appeal period.
To the extent possible, the examiner should provide current findings regarding all symptoms associated with the service-connected internal derangement of the left knee and should opine as to its severity.
The examiner should ask the Veteran to describe the flare-ups he experiences, including: frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment he experiences during a flare-up of his left knee symptoms and/or after repeated use over time. 
Based on the Veteran’s lay statements and the other evidence of record, the examiner should provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after repeated use over time.
If it is not possible to provide a specific measurement, or an opinion regarding flare-ups, symptoms, or functional impairment without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).
The examiner should comment on the extent of any functional impairment caused by the Veteran’s service-connected internal derangement of the left knee, to include in an occupational setting and in performing ordinary, daily activities. 
All findings should be fully documented in the examination report.

 
LESLEY A. REIN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Journet Shaw