﻿Citation Nr: AXXXXXXXX
Decision Date: 02/14/19 Archive Date: 02/14/19

DOCKET NO. 181012-958
DATE: February 14, 2019

ORDER

New and material evidence has been received to reopen the Veteran’s claim of entitlement to service connection for headaches.

New and material evidence has been received to reopen the Veteran’s claim of entitlement to service connection for bilateral hearing loss.

Service connection for headaches, to include as secondary to posttraumatic stress disorder (PTSD), is granted.

Service connection for bilateral hearing loss is granted.

Service connection for a heart disorder, to include as secondary to PTSD, is denied.

A rating in excess of 70 percent for PTSD effective December 28, 2015, is denied.

A total rating based on individual unemployability (TDIU) is granted.

FINDINGS OF FACT

1. In July 2007, VA denied service connection for headaches and bilateral hearing loss. The Veteran was informed in writing of the adverse determination and his appellate rights in July 2007. He did not submit a notice of disagreement (NOD) with the decision.

2. Evidence associated with the claims file since the July 2007 rating decision is new and material and raises a reasonable possibility of substantiating the Veteran’s claims.

3. The Veteran’s currently diagnosed headaches were caused by the Veteran’s service-connected PTSD.

4. Bilateral hearing loss originated because of active service.

5. The Veteran’s heart disorder was not caused or aggravated by his service-connected PTSD.

6. During the period on appeal, the Veteran’s PTSD has been characterized by no more than impaired short-term and long-term memory, depression, anxiety, difficulty sleeping, reduced reliability and productivity, occasional suicidal or homicidal ideation, impaired impulse control, obsessional rituals, near continuous panic, no hallucinations, and no difficulty understanding complex commands. 

7. The Veteran’s service-connected disorders make him unable to secure or follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The July 2007 rating decision that denied service connection for headaches and bilateral hearing loss is final. 38 U.S.C. § 7105 (West 2014); 38 C.F.R. § 20.1103 (2017).

2. New and material evidence sufficient to reopen the Veteran’s claim for headaches and bilateral hearing loss has been presented. 38 U.S.C. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156, 3.159, 3.326(a) (2017).

3. The criteria to establish service connection for headaches have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2017).

4. The criteria to establish service connection for bilateral hearing loss have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2017).

5. The criteria to establish service connection for a heart disorder, to include as secondary to PTSD, have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2017).

6. The criteria to establish a rating more than 70 percent, since December 28, 2015, for PTSD have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.7, 4.14, 4.21, 4.130, Diagnostic Code 9411 (2017).

7. The criteria to establish a total disability rating based on individual unemployability (TDIU) have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a), 4.16 (2017). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from March 2000 to April 2006. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

New and Material Evidence

Generally, absent the filing of an NOD within one year of the date of mailing of the notification of the initial review and determination of a veteran’s claim and the subsequent filing of a timely substantive appeal, a rating determination is final and is not subject to revision upon the same factual basis except upon a finding of clear and unmistakable error (CUE). 38 U.S.C. §§ 5108, 7105; 38 C.F.R. §§ 20.200, 20.300, 20.1103. 

A claimant may reopen a finally adjudicated claim by submitting new and material evidence. New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). The provisions of 38 C.F.R. § 3.156(a) create a low threshold, with the phrase “raises a reasonable possibility of substantiating the claim” enabling rather than precluding reopening and not constituting a third requirement that must be met before the claim is reopened. Shade v. Shinseki, 24 Vet. App. 110 (2010); Evans v. Brown, 9 Vet. App 273, 283 (1996). See Hodge v. West, 155 F.3d 1356 (Fed. Cir. 1998). 

New and material evidence received prior to the expiration of the appeal period will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. 38 C.F.R. § 3.156(b). Where documents are within VA’s control and could reasonably be expected to be a part of the record, such documents are, in contemplation of law, before VA and should be included in the record. Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

In July 2007, the RO denied service connection for headaches because the evidence indicated that the Veteran had no in-service occurrences of headache symptoms. The Veteran was informed in writing of the adverse decision and his appellate rights in July 2007. He did not submit an NOD. 

Th evidence received prior to the July 2007 rating decision reflects that the Veteran had a recent diagnosis for tension headaches but did not establish an in-service occurrence of headaches and therefore no nexus between the diagnosed disorder and the Veteran’s service could be established. 

In July 2007, the RO also denied service connection for bilateral hearing loss because the evidence indicated that the Veteran did not have bilateral hearing loss to a compensable degree. The Veteran was informed in writing of the adverse decision and his appellate rights in July 2007. He did not submit an NOD. 

New and material evidence pertaining to the issues of service connection for headaches and bilateral hearing loss was not received by VA or constructively in its possession within one year of written notice of the July 2007 rating decision. Therefore, that decision became final. 38 C.F.R. § 3.156(b). 

The Veteran’s file now contains additional evidence regarding his claim to establish service connection for headaches. The additional documentation received since July 2007 includes a VA examination from September 2016. The September 2016 examiner indicated that the Veteran’s headaches are the result of the Veteran’s service-connected PTSD. 

The Veteran’s file also now contains additional evidence regarding his claim to establish service connection for bilateral hearing loss. The additional documentation received since July 2007 includes two VA audiological examinations. The examinations indicate that the Veteran’s bilateral hearing loss has worsened to the degree that it now may be service-connected under VA regulations. 

When determining whether a claim should be reopened, the credibility of the newly submitted evidence is presumed. Justus v. Principi, 3 Vet. App. 510 (1992). Here, the newly-submitted evidence is of such significance that, when considered for the limited purpose of reopening the Veteran’s claim, it raises a reasonable possibility of substantiating his claim for service connection when considered with the previous evidence of record. As new and material evidence has been received, the Veteran’s claims for entitlement to service connection for headaches and bilateral hearing loss are reopened.

Service Connection

Service connection may be granted for current disability arising from disease or injury incurred or aggravated by active service. 38 U.S.C. § 1110. Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection shall be granted on a secondary basis under the provisions of 38 C.F.R. § 3.310 (a) where it is demonstrated that a service-connected disorder has caused a nonservice-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995).

Entitlement to service connection for headaches, to include as secondary to PTSD

In February 2007, the Veteran was afforded a VA examination. The examiner noted a diagnosis for tension headaches and recorded symptoms including increased headache frequency over the preceding two months. The examiner noted no associated neurological symptoms and the Veteran denied functional limitations due to his headache disorder. The examiner opined that the Veteran should avoid frequent climbing and working at unprotected heights. The examiner did not suggest possible etiologies for the Veteran’s headache disorder. 

In September 2016, the Veteran was afforded a VA examination. The Veteran reported that his headaches began in 2005 but noted that the disorder had not been formally diagnosed. The examiner opined that PTSD can cause a variety of symptoms including headaches and concluded that the Veteran’s PTSD causes his tension headache disorder.

The competent medical evidence as to the etiology of his headaches indicates that the Veteran’s headaches are the result of his service-connected PTSD. Upon resolution of all reasonable doubt in the Veteran’s favor, the Board concludes that service connection is warranted for headaches and the claim is granted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Service connection for bilateral hearing loss

Service connection for impaired hearing shall be established when the thresholds for any of the frequencies of 500, 1000, 2000, 3000 and 4000 Hertz are 40 decibels or more; or the thresholds for at least three of these frequencies are 26 decibels; or speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2017). 

In the February 2000, the Veteran was afforded an audiological examination at enlistment. During this examination, pure tone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 5 0 5 0 15

LEFT 5 5 15 15 20

In November 2000, the Veteran was afforded an audiological examination. During this examination, pure tone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 0 10 15 20

LEFT -5 5 10 15 25

In May 2005, the Veteran was afforded an audiological examination. During this examination, pure tone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 10 0 5 15

LEFT 5 5 20 15 30

In February 2007, the Veteran was afforded a VA audiological examination. The Veteran reported exposure to loud sounds during weapon training and while working in an enclosed dog kennel. The Veteran reported that his hearing loss existed since approximately 2000 and noted no post-service noise exposure. During this examination, pure tone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 20 15 15 15 30

LEFT 25 20 25 20 30

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 100 percent in the left ear. Based on these results, the VA examiner concluded the Veteran had hearing in the normal range dropping to a mild loss at 4000 Hz bilaterally. The examiner noted functional impairment which resulted in difficulty hearing when background noise is present. 

In November 2016, the Veteran was afforded a VA audiological examination. During this examination, pure tone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 30 30 30 30 25

LEFT 30 35 35 35 35

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and 100 percent in the left ear.

In April 2017, the Veteran was afforded a VA audiological examination. However, the examiner noted that the Veteran’s test results were inconsistent even after reinstruction. The examiner recommended an audiometric revaluation to establish true thresholds.

In August 2017, the Veteran was afforded a VA audiological examination. During this examination, pure tone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 25 20 20 20 25

LEFT 20 20 25 35 40

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and 100 percent in the left ear. Based on these results, the VA examiner concluded the Veteran had sensorineural hearing loss in the left ear. The examiner noted functional impairment which resulted in difficulty hearing communication, especially when background noise is present. The examiner concluded that the Veteran’s left ear hearing loss was the result of his military service and noted that the Veteran is already service-connected for tinnitus. 

The Veteran contends that his hearing loss began as the result of his service. As discussed by the August 2017 VA examiner, the Veteran’s tinnitus is service connected. The Veteran’s bilateral hearing loss met the threshold requirement to be service-connected as of the November 2016 hearing examination. Upon resolution of all reasonable doubt in the Veteran’s favor, the Board concludes that service connection is warranted for bilateral hearing loss and the claim is granted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Entitlement to service connection for a heart disorder, to include as secondary to PTSD

A September 2011 treatment note reports that the Veteran has a strong family history of cardiac problems at a young age. 

A June 2015 stress test indicated the Veteran did not have ischemia and the clinician noted the Veteran had good exercise capacity. 

In January 2016, the Veteran was afforded a VA examination. The examiner noted a diagnosis for sinus bradycardia beginning in 2016 and an acute myocardial infarction from July 2011. The examiner noted that the latter incident occurred on July 4th which is a day that is often stressful for the Veteran. The examiner opined that the Veteran’s heart disorder was not related to his PTSD. The examiner reasoned that chemotherapy and malignancy increase the likelihood of the formation of thrombosis or clot formation. 

The Board has considered the Veteran’s claim that his heart disorder is caused by his PTSD. The Veteran is not competent, however, to offer an opinion as to the etiology of this type of medical condition due to the medical complexity of the matter involved. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

A preponderance of the evidence is against a finding that the Veteran’s heart disorder originated because of his PTSD. The January 2016 examiner noted the Veteran’s health issues surrounding the time of his heart attack, specifically his chemotherapy treatment for a malignancy. There is no competent medical evidence to link the Veteran’s heart disorder to his PTSD. Therefore, service connection is not warranted and the claim is denied.

Entitlement to a rating in excess of 70 percent for PTSD effective December 28, 2015

The Veteran’s PTSD is presently evaluated as 70 percent. A 70 percent evaluation requires occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood due to symptoms such as suicidal ideation, obsessional rituals which interfere with routine activities, intermittently illogical, obscure, or irrelevant speech, near continuous panic or depression affecting the ability to function independently, appropriately and effectively, impaired impulse control (such as unprovoked irritability with periods of violence), spatial disorientation, neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances (including work or a work like setting), and an inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

A 100 percent evaluation requires total occupational and social impairment due to symptoms such as gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, a persistent danger of hurting himself or others, an intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place, and memory loss for names of close relatives, own occupation, or own name. Id. 

The use of the phrase “such symptoms as,” followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant’s social and work situation. See Mauerhan v. Principi, 16 Vet. App. 436 (2002).

In December 2014, the Veteran was afforded a VA examination. The examiner noted a diagnosis for PTSD and indicated symptoms that cause clinically significant occupational and social impairment with reduced reliability and productivity. The examiner noted additional symptoms including depressed mood, anxiety, suspiciousness, flattened affect, difficulty establishing effective relationships, and difficulty adapting to stressful situations. The examiner noted no suicidal ideation, obsessional rituals, spatial disorientation, impaired impulse control, memory loss, panic attacks, or neglect of personal appearance and hygiene. The Veteran noted being married for the preceding two months and stated that he was a social person and reported no relationship trouble. 

In January 2016, the Veteran was afforded a VA examination. The examiner noted a diagnosis for PTSD and reported symptoms including mild memory loss, panic attacks, difficulty establishing relationships, obsessional rituals, impaired impulse control, depressed mood, anxiety, and suspiciousness. The Veteran reported that he lives with his wife but mentioned that they had a strained relationship and noted an upcoming divorce. The Veteran stated that he is currently employed by his parent’s property management company and noted various previous occupations including dog trainer and surveyor. The Veteran reported symptoms including poor concentration, poor memory, depression, anxiety, and hypervigilance. The Veteran did not report symptoms of suicidal ideation or hallucinations. 

In a separate January 2016 medical opinion, the Veteran reported trouble sleeping and endorsed feelings of helplessness and anxiety. The Veteran reported suicidal thoughts a few weeks preceding the examination but denied current suicidal ideation. The Veteran also denied auditory/visual hallucinations and noted no evidence of thought disorder. 

In a February 2016 letter from Dr. Robert Hayes, Psy.D (“Dr. Hayes”), the Veteran was noted to have PTSD symptoms with a marked impairment on his social and occupational functioning. Dr. Hayes noted periods of complete functional impairment that prevent occupational and social interaction. Dr. Hayes specifically noted symptoms including obsessional rituals, near continuous panic or depression, impaired impulse control, deficits in short-term and long-term memory, and consistent headaches. 

In a January 2017 mental health note, the Veteran was noted to have no suicidal or homicidal ideation and no audio or visual hallucinations. 

During the period on appeal, the Veteran’s PTSD has been characterized by no more than impaired short-term and long-term memory, depression, anxiety, difficulty sleeping, reduced reliability and productivity, occasional suicidal or homicidal ideation, impaired impulse control, obsessional rituals, near continuous panic, no hallucinations, and no difficulty understanding complex commands. 

For the appellate period, the evidence demonstrates that the Veteran’s PTSD had been productive of symptomatology of a severe nature, i.e., he exhibits occupational and social impairment with reduced reliability and productivity and difficulty in establishing and maintaining effective work and social relationships, and is adequately contemplated by the assigned 70 percent rating. 

As the U.S. Court of Appeals for the Federal Circuit explained, evaluation under § 4.130 is “symptom-driven,” meaning that “symptomatology should be the fact-finder’s primary focus when deciding entitlement to a given disability rating” under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir.2013). The symptoms listed in DC 9411 are not exhaustive, but rather “serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

In the context of determining whether a higher 100 percent disability evaluation is warranted, the DC requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment with deficiencies in all areas and inability to establish and maintain effective relationships -i.e., “the regulation... requires an ultimate factual conclusion as to the veteran’s level of impairment...” Vazquez-Claudio, 713 F.3d at 117-18 ; see 38 C.F.R. § 4.130, DC 9411. 

The preponderance of the evidence is against finding that the Veteran’s PTSD caused occupational and social impairment with deficiencies in most areas and inability to establish and maintain effective relationships, particularly given the fact that the Veteran has not demonstrated the type of severe impairment of the symptoms listed in the exemplar criteria for a 100 percent rating. There was no gross impairment in thought or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger to self or others, intermittent inability to perform maintenance of minimal personal hygiene, disorientation to time or place, and no forgetfulness of the names of close relatives. In short, he does not have the collection of symptoms indicative of the most severe disability. Thus, the Board finds that a 100 percent rating is not warranted.

TDIU

Entitlement to TDIU requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. Consideration may be given to the Veteran’s level of education, special training and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by nonservice-connected disabilities. 38 U.S.C. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2016). In reaching such a determination, the central inquiry is “whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

The law provides that a total disability rating may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16 (a) (2016).

The Veteran has reported some higher-level education and reported having a criminal justice certification in October 2007. In an April 2014 vocational factors document, the Veteran was noted to have past employment as a newspaper person from June 1998 to August 1998; surveyor assistant from June 1998 to January 2000; military police from March 2006 to April 2006; dog handler from May 2007 to January 2008; and dog trainer from March 2008 to October 2011. 

In a separate April 2014 document, the Veteran stated that his PTSD, back disability, tinnitus, and heart problems all make it difficult for him to work. 

In a December 2014 VA examination, the Veteran reported his highest level of education as a high school graduate and reported various previous occupations. The Veteran reported being unable to continue as a dog trainer due to being charged and then banned. Subsequent evidence suggests the Veteran was charged with animal cruelty. The examiner recommended follow up treatment but stated the Veteran’s PTSD symptoms do not inhibit his ability to gain employment.

In a January 2016 VA examination, the Veteran noted that he was working at his parent’s property management company and various other previous occupations. 

In a February 2016 letter from Dr. Hayes, the Veteran was noted to have severe inability to function competently at times in his occupational and social interaction. Dr. Hayes stated that, at times, the Veteran avoids all contact with others and is unable to participate in or concentrate on leisure activities, including previous hobbies. 

In a May 2018 vocational assessment, the vocational expert concluded that the Veteran has been unable to secure and follow substantial gainful employment because of his service-connected PTSD. Specifically, the vocational expert noted that the Veteran’s memory deficits, day time drowsiness, irritable behavior with angry outbursts, and impaired impulse control preclude him from maintaining a level of productivity consistent with competitive employment. 

In determining whether the Veteran is eligible to receive TDIU benefits, the Board observes that the Veteran is service-connected for PTSD, currently evaluated as 70 percent disabling; lumbar spine degenerative disc disease, currently evaluated as 20 percent disabling; right and left lower extremity radiculopathy, currently evaluated as 20 percent disabling each; tinnitus, currently evaluated as 10 percent disabling; and right wrist tendinitis, currently evaluated as 10 percent disabling. The Veteran’s combined evaluation was 80 percent, effective June 22, 2012, and is currently 90 percent, effective October 24, 2016. The assigned combined evaluation of 80 percent for the Veteran’s service-connected disabilities meets the criteria for schedular consideration of TDIU. See 38 C.F.R. § 4.16 (a). Thus, the Veteran is eligible to receive TDIU benefits.

Having determined that the Veteran meets the percentage threshold requirements, the remaining inquiry is whether he is unable to secure or follow substantially gainful occupation because of such service-connected disabilities. The evidence of record indicates that the Veteran’s PTSD precludes him from maintaining the level of productivity required to maintain competitive employment. Specifically, the Veteran’s memory deficits and angry outbursts preclude substantially gainful employment. Thus, the evidence of record demonstrates that the Veteran’s service-connected disabilities render him unable to secure and follow a substantially gainful occupation.

Based on the above analysis, the competent, credible, and probative evidence of record demonstrates that the Veteran’s service-connected disabilities render him unemployable. In resolving all doubt in the Veteran’s favor, entitlement to a TDIU has been established and his appeal is granted. 38 C.F.R. § 4.16 (2017).

When all the evidence is assembled, VA is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001). The preponderance of the evidence indicates that the Veteran is entitled to a TDIU.

 

Vito A. Clementi

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Wozniak, Joshua