﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/20 Archive Date: 10/30/20

DOCKET NO. 191218-50902
DATE: October 30, 2020

ORDER

New and relevant evidence has not been received and readjudication of the claim for entitlement to service connection for pseudofolliculitis barbae is not warranted.

New and relevant evidence has been received in order to readjudicate the claim for entitlement to service connection for tinnitus.

Service connection for tinnitus is denied.

REMANDED

Service connection for erectile dysfunction as secondary to a service-connected lumbar spine disorder is remanded.

FINDINGS OF FACT

1. With regard to pseudofolliculitis barbae, the evidence received since the final July 2017 rating decision, by itself, or in conjunction with previously considered evidence, is not new and relevant.

2. With regard to tinnitus, the evidence received since the final July 2017 rating decision, is new and relevant.

3. The Veteran's tinnitus did not manifest during service or within one year of separation and is not otherwise related to service.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for entitlement to service connection for pseudofolliculitis barbae are not met. 38 U.S.C. § 5108; 38 C.F.R. § 3.2501.

2. The criteria for readjudicating the claim for entitlement to service connection for tinnitus are met. 38 U.S.C. § 5108; 38 C.F.R. § 3.2501.

3. Tinnitus was not incurred in active service, nor may it be presumed to have been so incurred. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from June 1986 to April 1988 and August 1988 to July 1995. He also had a period of active duty for training from January 1985 to April 1985 with the U.S. Navy Reserves.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an April 2019 rating decision. This matter is being appealed under the Appeals Modernization Act (AMA) appellate framework. The Veteran timely appealed that decision to the Board in a July 2019 VA Form 10182 and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The Board notes that additional evidence was added to the claims file during a period of time when new evidence was not allowed, to include shaving profiles submitted to VA in July 2019. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision

New and Relevant Evidence

Under the Appeals Modernization Act (AMA), in order to readjudicate a previously disallowed claim, new and relevant evidence must be received. 38 U.S.C. § 5108 (a); 38 C.F.R. § 3.156 (d). “New evidence” is evidence not previously part of the actual record before agency adjudicators. “Relevant evidence” is information that tends to prove or disprove a matter at issue in a claim. 38 C.F.R. § 3.2501 (a)(1).

1. New and relevant evidence has not been received and readjudication of the claim for entitlement to service connection for pseudofolliculitis barbae is not warranted.

The question in this case is whether the Veteran submitted evidence after the prior final denial of his claim for service connection for pseudofolliculitis barbae, under the legacy system, and if so, whether that evidence is new and relevant to his AMA claim.

Under the legacy system, a rating decision becomes final if the veteran does not file an appeal or submit new and material evidence within one year of the issuance of the rating decision. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.156 (b), 20.200, 20.201, 20.302, 20.1103. 

In this case, the RO previously considered and denied the Veteran’s claim for service connection for pseudofolliculitis barbae in a July 2017 rating decision. In that decision, the RO found that the Veteran’s service treatment records did not document pseudofolliculitis barbae. 

The Veteran was notified of the July 2017 rating decision and of his appellate rights and while he began an appeal, he did not file a substantive appeal. See 38 U.S.C. § 7105; 38 C.F.R. § 20.1103. Therefore, the Board finds that the July 2017 rating decision is final under the legacy system.

The evidence received since the July 2017 rating decision includes VA medical records and lay statements from the Veteran.

With respect to the VA medical records, the Board notes that the majority of that evidence does not pertain to pseudofolliculitis barbae and did not add any new or relevant evidence. The Veteran’s lay statements also did not add new or relevant evidence for his pseudofolliculitis barbae claim.

As above, while the Veteran and his representative did submit military documents showing that the Veteran was on profile for his pseudofolliculitis barbae (PFB), these documents were filed during a period of time when new evidence was not allowed. Therefore, unfortunately, the Board may not consider this evidence. 38 C.F.R. § 20.300.

Accordingly, the Board finds that new and relevant evidence has not been presented in order to readjudicate the claim for service connection for pseudofolliculitis barbae.

2. New and relevant evidence has been received in order to readjudicate the claim for entitlement to service connection for tinnitus.

The question as to the Veteran’s tinnitus claim is whether the Veteran submitted evidence after the prior final denial of his claim for service connection, under the legacy system, and if so, whether that evidence is new and relevant to his AMA claim.

Under the legacy system, a rating decision becomes final if the veteran does not file an appeal or submit new and material evidence within one year of the issuance of the rating decision. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.156 (b), 20.200, 20.201, 20.302, 20.1103. 

In this case, the RO previously considered and denied the Veteran’s claim for service connection for tinnitus in a July 2017 rating decision. In that decision, the RO found that the Veteran’s service treatment records did not document tinnitus. 

The Veteran was notified of the July 2017 rating decision and of his appellate rights and while he began an appeal, he did not file a substantive appeal. See 38 U.S.C. § 7105; 38 C.F.R. § 20.1103. Therefore, the Board finds that the July 2017 rating decision is final under the legacy system.

The evidence received since the July 2017 rating decision includes VA medical records, a VA examination and lay statements from the Veteran.

The July 2018 VA examination is new evidence. It is also relevant in that it contains information that tends to prove or disprove the matter at issue.

Accordingly, the Board finds that new and relevant evidence has been presented in order to readjudicate the claim for service connection for tinnitus. 

3. Service connection for tinnitus is denied

Turning to the merits of the claim, the Board notes that service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. As organic diseases of the nervous system, including tinnitus, are considered to be chronic diseases for VA compensation purposes, if chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303 (b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) and Fountain v. McDonald, 27 Vet. App. 258 (2015) (holding that the presumptive provisions of 38 C.F.R. § 3.309 (a) include tinnitus as an organic disease of the nervous system where there is evidence of acoustic trauma).

In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including organic diseases of the nervous system (tinnitus), are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to service connection for tinnitus.

At the outset, the Board notes that the April 2019 rating decision before the Board included a favorable finding, which stated that the Veteran had been diagnosed with tinnitus during a July 2018 examination. The Board is bound by this favorable finding as to diagnosis. 38 U.S.C. § 5104A.

Therefore, the issue before the Board is whether the Veteran’s tinnitus is caused by or related to his military service.

The Veteran’s service treatment records are negative for any complaints, treatment, or diagnosis of tinnitus. During a June 1995 separation examination, clinical evaluation of the ears was normal and tinnitus was not noted on the examination report. In a June 1995 report of medical history form, the Veteran specifically denied having ear trouble.

The Board notes that neither tinnitus nor manifestations sufficient to identify the disease entity were shown during service. Rather, the Veteran denied having any history of ear trouble during that time period. The pertinent regulations require that manifestations are “noted” in the service records and that is not case in this instance. Therefore, while the currently diagnosed tinnitus is a chronic disease under 38 C.F.R. § 3.309 (a), no notations of the disease or any characteristic manifestations of tinnitus were shown in the service records. As such, service connection under 38 C.F.R. § 3.303 (b) is not warranted, and tinnitus may not be presumed to have been incurred in service. 38 U.S.C. § 1101; 38 C.F.R. §§ 3.307, 3.309.

Additionally, there is no evidence showing that the Veteran’s tinnitus manifested within one year of his separation from service. Relevant medical records show that the Veteran complained of ear ringing in May 1998 and was diagnosed with tinnitus. He separated from service in July 1995. As such, presumptive service connection is also not warranted. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

The evidence of record also does not show that his current tinnitus is related to service. 

VA medical records show that the Veteran reported tinnitus at various times over the years, however, these records do not provide an etiology for the disorder.

A June 2017 statement from the Veteran’s employer notes that the Veteran has reported ringing in his ears. She stated that the Veteran associated the tinnitus to loud noise exposure, without hearing protection, during his military service.

The Veteran was then afforded a VA examination in connection with his claim in July 2018. After an audiological examination and review of the claims file, the examiner opined that the Veteran’s tinnitus was less likely than not caused by or the result of military noise exposure. In support of that opinion, the examiner noted that there was normal hearing in both ears, as well as normal hearing during and upon separation from service. The examiner also noted that there were no significant threshold shifts during service. The examiner then opined that there was no evidence of any hearing loss during service nor evidence of acoustic trauma, despite the Veteran’s MOS, which had a high probability of hazardous noise exposure. The examiner then noted that there was no complaint of or treatment for tinnitus during service. Therefore, the examiner opined that since there was no objective evidence of noise injury in service, there was no basis on which to conclude that the claimed tinnitus was associated with or aggravated by noise injuries. She found that in the absence of an objectively verifiable noise injury, (hearing loss in service or a permanent significant shift in thresholds), the association between claimed tinnitus and service could not be made.

There is no medical evidence showing otherwise. 

The Board does acknowledge the Veteran’s statements that his tinnitus is related to service. During his July 2018 VA examination, the Veteran also reported an onset of ear ringing in 1995 or 1996. The Board notes that the Veteran is competent to report his experience and symptoms in service and thereafter. Layno v. Brown, 6 Vet. App. 465, 469 (1994); Barr v. Nicholson, 21 Vet. App. 303 (2007); Buchanan v. Nicolson, 451 F.3d 1331 (Fed. Cir. 2006). A veteran can attest to factual matters of which he or had had first-hand knowledge, e.g., experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). 

The Federal Circuit has held that lay evidence is one type of evidence that must be considered and competent lay evidence can be sufficient in and of itself. The Board, however, retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). 

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465 (1994) (distinguishing between competency (“a legal concept determining whether testimony may be heard and considered”) and credibility (“a factual determination going to the probative value of the evidence to be made after the evidence has been admitted”)); see also Barr v. Nicholson, 21 Vet. App. 303 (2007). 

In this case, although the Veteran is competent to report symptoms since 1995 or 1996, the Board finds that such statements are inconsistent with the contemporaneous record. As discussed above, a June 1995 separation examination did not note any tinnitus or relevant symptoms. The Veteran indicated no issues with his ears in a June 1995 report of medical history form. A VA medical record dated May 1998 reported the presence of ear ringing. Thus, the Board finds that there is actually affirmative evidence showing that the Veteran did not have tinnitus at the time of his separation from service or to a compensable degree within one year of separation from service. For these reasons, the Board finds that the reported history of symptoms in 1995 or 1996 are not probative in that they do not match the contemporaneous evidence of record.

Additionally, the Board finds that the July 2018 VA examiner’s opinion is more probative, as it was provided by a medical professional with knowledge, training, and expertise and are supported by a complete rationale based on such knowledge. She reviewed the claims file and considered the Veteran’s reported history and lay statements. She also reviewed the Veteran’s audiograms and found no significant threshold shifts in-service and no evidence of hazardous noise exposure, which one would expect to see if the Veteran’s tinnitus was related to noise exposure while in service.

Based on the foregoing, the Board finds that a preponderance of the evidence is against the Veteran’s claim for service connection for tinnitus. Because the preponderance of the evidence is against the Veteran’s claim, the benefit of the doubt provision does not apply. Accordingly, the Board concludes that service connection is not warranted.

 

REASONS FOR REMAND

Service connection for erectile dysfunction as secondary to a service-connected lumbar spine disorder is remanded.

The Board finds that a remand is necessary as to the Veteran’s erectile dysfunction claim in order to correct duty to assist errors that occurred prior to the rating decision on appeal. 

At the outset, the Board notes that the Veteran originally filed a claim for service connection for erectile dysfunction in June 2017, which was denied in a July 2017 rating decision. The Veteran then filed a new claim for this condition in February 2019 and, although the RO implicitly reopened it, it was denied on the merits in an April 2019 rating decision. Favorable findings are binding on the Board. As such, the Board notes that adjudication of whether new and relevant evidence has been submitted in order to adjudicate a claim for entitlement to service connection for erectile dysfunction is not necessary and the Board’s remand, instead, addresses the claim on its merits

The Veteran was afforded a VA examination in connection with his claim in March 2019. That examiner provided an opinion as to secondary service connection only; that opinion was also incomplete. Specifically, the examiner did not provide an opinion as to aggravation. As such, an additional VA medical opinion is required. Further, the VA examiner should also be sure to provide a separate opinion as to direct service connection.

Accordingly, the case is REMANDED for the following action:

The Veteran should be afforded a VA medical opinion to determine the nature and etiology of any erectile dysfunction disorder that may be present. 

A physical examination is only needed if deemed necessary by the VA examiner.

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The examiner should opine as to whether it is at least as likely as not that the Veteran has a current erectile dysfunction disorder that is causally or etiologically related to his military service, to include any injury or symptomatology therein. 

The examiner should then opine as to whether it is at least as likely as not that the Veteran’s erectile dysfunction was aggravated by his service-connected low back disorder.

(The term “at least as likely as not” does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.) 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important “that each disability be viewed in relation to its history [,]” 38 C.F.R. § 4.1, copies of all pertinent records in the appellant’s claims file, or in the alternative, the claims file, must be made available to the examiner for review. 

 

 

DAVID R. SEATON

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board B. Rideout-Davidson, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.